## McClung *v.* Colwell.

### (*Knoxville.*    October 26, 1901.)

1. CORPORATIONS.   *Pledges of shares of stocks.*

   A pledgee, to whom shares of stock have been assigned and delivered as collateral security, is secure against the pledgor and his creditor without transfer of same on the books of the corporation.   (*Post, p. 600.*)

   Case cited: Parker *v.* Bethel Hotel Co., 96 Tenn., 274.

2. SAME.   *Same.*

   A pledgee of shares of stock may constitute and appoint the pledgor, in whose name the shares stand on the books of the company, his agent to sell, exchange, or otherwise dispose of same for the pledgee's benefit.   (*Post, pp. 598, 599.*)

   Cases cited: Johnson *v.* Smith, 11 Hum., 400; Wharton *v.* Lavender, 14 Lea, 188; Grange Warehouse Co. *v.* Owen, 86 Tenn., 355.

3. SAME.   *Same.*

   The pledgor's creditors acquire no right or interest by attachment of shares of stock before their delivery to the pledgee, which the pledgor had, as the pledgee's agent, taken in exchange for other pledged shares, under an agreement that they should stand in the room and stead of the former pledged shares, even though the shares were issued and stood in the pledgor's name.   (*Post, pp. 593–600.*)

   Cases cited: Young *v.* South Tredegar Iron Co., 85 Tenn., 189; Oates *v.* Baxter, 97 Tenn., 447.

4. RESULTING TRUST.   *Applies to personalty.*

   Where shares of stock are issued or assigned to one person a trust will result in favor of another person who advances the consideration in whole or in part.   (*Post, pp. 600–602.*)

McClung *v.* Colwell.

Cases cited: Sayles *v.* Cox, 95 Tenn., 579; Arbuckle *v.* Kirkpat. rick, 98 Tenn., 221; Cornick *v.* Richards, 3 Lea, 1; Bank *v.* Baker, 8 Hum., 447.

FROM KNOX.

Appeal from Chancery Court of Knox County. JOSEPH W. SNEED, Ch.

GREEN & SHIELDS for McClung.

WEBB, McCLUNG & BAKER for Colwell.

McALISTER, J. Complainants, as creditors of B. S. Colwell, are seeking by this attachment bill to subject to the satisfaction of their claims 165 shares of stock in the Southern Car and Foundry Company, standing in the name of the defendant, B. S. Colwell. The attachment was levied on the stock while in the hands of defendant, W. P. Chamberlain, and notice of the attachment given to Colwell and the Southern Car Company. On May 14, 1901, J. D. Case intervened in said cause by petition, asserting title to said stock under a pledge made to him by defendant, Colwell. Case, it appears, had become the indorser of Colwell on notes amounting to $5,070, and to indemnify Case, Colwell had delivered to him, as collateral security, ninety shares of the preferred stock of the Lenoir Car Company, represented by nine certificates each for ten shares.

23 P—38

Some of these shares Case had held for some time prior to that date. All of these certificates had been properly indorsed by Colwell and delivered to Case. It further appears that, in December, 1900, the Lenoir Car Company was consolidated with the Southern Car and Foundry Company, and new stock was issued by the Southern Car and Foundry Company in lieu of stock of the Lenoir Car Company.

The Court of Chancery Appeals found that Colwell had informed Case of the proposed exchange, and the latter agreed that the stock which Case held as collateral security should be exchanged for new stock in the Southern Car and Foundry Company, into which the Lenoir Car Company had become merged. It was agreed between Colwell and Case that the 165 shares of preferred stock, to be issued by the Southern Car and Foundry Company for the ninety shares in the Lenoir Car Company, would be turned over to Case, and that the cash paid as dividends on the old stock should be received by Case. It was then agreed that Case should turn over to Colwell, for exchange, the old stock which the former held as collateral, and that in effecting the exchange Colwell should act as the agent of Case. It appears that at this time the old stock was standing on the books of the Lenoir Car Company in the name of Colwell, never having been transferred, but the shares had been assigned and indorsed by Colwell. It was further agreed that the new stock in the Southern Car Company was

McClung *v.* Colwell.

to be issued in Case's name.   Case, with the under-
standing as already stated, turned over the ninety
shares of stock in the Lenoir Car Company to Col-
well for exchange for the new stock.   One hundred
and sixty-five shares of preferred stock in the new
company were then issued in the name of Colwell,
covered by certificate No. 49.   This stock, while in
the hands of W. P. Chamberlain, president of the
new company, was attached in this suit by com-
plainant, McClung *et als.*, as creditors of Colwell.
The Southern Car and Foundry Company and the
Lenoir Car Company had no notice of Case's claim
on the stock at the time of the attachment.   So
that, upon this statement, the legal question pre-
sented is the superiority of the claim of the attach-
ment creditor or the pledgee of the stock.

The Court of Chancery Appeals held that the
stock in the Lenoir Car Company had, by the
pledge and arrangements of the parties, become the
property of Case; that the certificates of stock issued
by the new company were paid for by the surrender
of stock of the old company, which was the
property of Case, and the understanding was that
title of these new certificates or shares should at
once vest in Case, to be held under the same
arrangement and pledge that the stock of the old
company had been (held).   It was accordingly held
that, in contemplation of law, the title to the new
stock passed, as between Case and Colwell and the
creditors of Colwell, to Case.   Second, that if the

first proposition be not sound the new stock was impressed with a resulting or constructive trust, by operation of law, in the hands of Colwell, and that the rights of Case thereunder were superior to those of attaching creditors.

Complainants appealed, and their first assignment of error is that the Court of Chancery Appeals erred in holding as a conclusion, from the facts stated in their opinion, that J. D. Case turned over the stock of the Lenoir Car Company to the defendant, B. S. Colwell, as agent, for the purpose of having the Southern Car and Foundry Company stock substituted therefor. Second, that said Court erred in holding that the principle of resulting and constructive trusts applies to certificates of stock, and that the stock of the Southern Car and Foundry Company was impressed with such a trust in the hands of the defendant, Colwell. Third, that said Court erred in holding that the rights of said J. D. Case to the stock of the Southern Car and Foundry Company were superior to those of the complainants.

It is argued on behalf of appellant that when complainants attached the said stock of the Southern Car and Foundry Company it was standing on the books in the name of the defendant, Colwell, who was the ostensible owner of it, and clothed with all the *indicia* of title, and that complainants' right to the stock under its attachment cannot be defeated by a secret pledge or agreement between the debtor and another party. Counsel cite in support of this

position *Young* v. *South Tredegar Iron Co.*, 1 Pickle, 189; *Cates* v. *Baxter*, 13 Pickle, 447.

It is conceded in the case at bar that if the new stock had been indorsed to Case, or if its transfer had been made on the books of the company and it had been actually delivered to him, his title would prevail. But there being no indorsement and delivery of the new stock to Case, and no transfer to him on the books of the company, his claim is subordinate to that of complainants.

It is argued that there was simply an unperformed executory agreement between Colwell and Case that the new stock when issued should be turned over to Case. It is insisted that this agreement, as between Colwell and Case, was valid, but not enforcible as between Case and the attaching creditors of Colwell. In a word, it is insisted that as between the parties themselves an executory contract of pledge is good without manual possession, but as to those acquiring intervening rights *in rem*, without notice of the pledge, the pledgee, who has not taken full possession, generally fails to gain precedence. Schouler on Bailments, Sec. 199.

We think the finding of the Court of Chancery Appeals on the facts is a complete answer to the position assumed by counsel for complainant, and that the cases referred to, *Young* v. *South Tredegar Iron Co.*, 1 Pickle, and *Cates* v. *Baxter*, 13 Pickle, have no bearing on this case. That Court finds as a fact that the old stock had never been surren-

dered by Case, but was simply turned over to the pledgor, Colwell, as the agent of Case. Said that Court on this point, viz.: "So while this stock was sent to the debtor, Colwell, it was simply sent to him as agent of Case, to have the necessary change effected, and the stock in the new company, procured in the place of that in the old, to be surrendered." That Court, continuing, said, viz.: "So we are of opinion and hold that when Colwell had the certificates of stock in the new company issued in his name he to this extent violated the trust, but he could not by this act change the legal and equitable rights of Case. The stock in the new company was issued for that in the old. It was paid for by the surrender of the certificates in the old company, and these certificates at the time of the surrender were the property of Case; both the legal title and equitable right and interest in the same at that time rested in Case, and Colwell was merely an agent to whom these certificates of stock had been transferred for this special purpose. It results," said that Court, "that the stock in the new company, although the certificates were issued in the name of Colwell, and although the legal title thereto may be said to have rested in him, it was in equity the property of Case, and was held by Colwell as agent and trustee for Case."

It is denied by counsel for complainants that the pledgor may act as agent for the pledgee, and that to permit a pledgor's agency to be set up against

attaching creditors, is practically to dispense with delivery altogether, and thus nullify a fundamental rule of bailment. Citing Schouler on Bailment, Sec. 193.

We are unable to concur with counsel in this contention. The authorities are just the contrary. In *Kellogg* v. *Thompson*, 142 Mass., 76, it was held that if property is delivered by the pledgee to the pledgor to sell or dispose of as his agent, and account to him for the proceeds as agreed upon between them, this transaction would preserve the pledgee's title in the property. In *Thayer* v. *Dwight*, 104 Mass., 258, it was held that a pledgee does not forfeit his pledge by allowing the pledgor to contract for the sale of the property in his own name. Jones on Pledges, Secs. 42–45; *Harness* v. *Russell*, 118 U. S., 663. (L. Ed., 285.) In *White* v. *Platt*, 5 Denio, 269, it was held that where promissory notes are pledged by the debtor to secure a debt the pledgee acquires a special property in them; that property is not lost by their being redelivered to the pledgor to enable him to collect them, the principal debt being still unpaid. Money which he may collect on them is the specific property of the creditors. It is deemed collected by the debtor in a fiduciary capacity. In this State it is said in two cases that the pledgor himself may be constituted the agent of the pledgee. *Johnson* v. *Smith*, 11 Hum., 400; *Wharton* v. *Lavender*, 14 Lea, 188; *Grange Warehouse Co.* v. *Owen*, 2 Pickle, 355.

Now, as we have already seen, the original stock in the Lenoir Car Company had been legally pledged to Case by an indorsement in blank and an actual delivery of the certificates. The transfer and assignment of a certificate of stock in a corporation either by absolute sale or by way of pledge or security for debt, passes to the vendee or pledgee the title thereto. *Parker* v. *Bethel Hotel Co.*, 12 Pickle, 274. This stock so transferred to Case was subsequently redelivered to Colwell, as the agent of Case, to exchange for stock in the Southern Car and Foundry Company under an agreement that the new stock should be issued in Case's name. Colwell breached his agreement with Case, and had the new stock issued in the name of Colwell. But this did not affect the title of Case. If, however, this were not so, the new stock would be impressed with a resulting trust that would be superior to the rights of the creditors of Colwell. It has been argued that under our decisions, stock in a corporation is not personal property, and that the doctrine of resulting trust is inapplicable to such property. It is now settled that the doctrine applies to both real and personal property. Bispham's Principles of Equity (1st Ed.), Sec. 80.

In Perry on Trusts, Sec. 130, the author says: "The rule embraces personal property as well as real estate, and if a man purchases a bond, annuity, stock, mortgage, or other personal interest in the name of a third person, the equitable ownership re-

sults to the person from whom the consideration moves; but it is said that a resulting trust cannot be set up in personal property *perishable* in its nature." Citing *Union Bank* v. *Baker*, 8 Hum., 447. Pomeroy, in his Equity Jurisprudence, Vol. 1, Sec. 1038, says the doctrine (resulting trust) in all its phases applies alike to personal and real property. In a footnote to said section, the following is stated, to wit: "Where a bond or shares of stock or annuity, or any other thing in action, or kind of personal property is assigned to one person a trust therein will result in favor of another who advances the consideration for the transfer in whole or in part." *Continental National Bank* v. *Weems*, 69 Texas, 489, S. C. 5 Am. St. Rep., 85. See also *Sayles* v. *Cox*, 95 Tenn., 579; *Arbuckle* v. *Kirkpatrick*, 98 Tenn., 221.

There is nothing in any of our decisions which would antagonize the general rule. It is true in many of our cases, stock is classified among choses in action (*Young* v. *South Tredegar Iron Co.*, 1 Pickle, 189), but in *Cornick* v. *Richards*, shares of stock are treated as personal property. In *Cates* v. *Baxter*, 13 Pickle, it is said that in many respects stock is treated as tangible personal property, but still it is after all a peculiar species of property, *sui generis.* By the Code it is provided that stock in corporations is personal property, and subject to levy and sale as such. However it is classified, it is of the

McClung *v.* Colwell.

nature of personal property, and subject to the rules governing resulting trusts in equity.

Finally, it was assigned as error that the Chancellor refused to decree a sale of the stock herein, and after satisfying the claim of Case, apply the balance in payment of the indebtedness due complainant.

It suffices to say in answer to this assignment that even if such relief were allowable, the bill was not framed for such purpose, and there is no pleading which would warrant such a decree. The decree of the Court of Chancery Appeals is affirmed, with costs.