DARRAGH v. ELLIOTTE et al. W. S. BILES & CO. v. SAME. ELLIOTTE v. W. S. BILES & CO. et al.

(Circuit Court of Appeals, Sixth Circuit. June 12, 1914.)

Nos. 2467–2469.

1. CHATTEL MORTGAGES (§ 8*)—PLEDGE DISTINGUISHED FROM MORTGAGE—DELIVERY OF POSSESSION.

A bankrupt partnership, which was a dealer in automobiles, ordered a car from the maker, which was shipped for delivery only on payment of a draft for the purchase price. Not having sufficient money to make the payment, $2,600 was advanced by claimants, who took a note from the bankrupt for $2,800, reciting that the car and an insurance policy thereon were pledged as collateral. At the same time a bill of sale was executed by bankrupts, under which the car was delivered to claimants, and was in their possession when suit for its recovery was brought by the trustee in bankruptcy. *Held*, that the bill of sale and note did not constitute a mortgage, necessary to be recorded as such under the state law, but a valid pledge, which could only be redeemed by the trustee by payment of the note.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. §§ 20–22; Dec. Dig. § 8.*]

2. PLEDGES (§ 11*)—VALIDITY—BAILMENT OF PROPERTY TO PLEDGOR.

The keeping of the car by claimants in the sales and storage garage of bankrupts, where they kept others owned and used by them, was merely a bailment, and did not invalidate the pledge under the law of Tennessee.

[Ed. Note.—For other cases, see Pledges, Cent. Dig. §§ 28–35; Dec. Dig. § 11.*]

Appeal from the District Court of the United States for the Western District of Tennessee; John E. McCall, Judge.

Suit in equity by C. H. Elliotte, trustee of the Merriman Bros. Auto Company, a partnership, bankrupt, against W. H. Darragh and W. S.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Biles & Co. Decree for complainant against Darragh, and for Biles & Co. against complainant and Darragh. From the decree, the trustee, Darragh, and W. S. Biles & Co. appeal separately. Modified and affirmed.

In Darragh v. Elliotte (No. 2467):

R. M. Barton, of Memphis, Tenn., for appellant.

C. S. Dashiell, of Memphis, Tenn., for appellees.

In W. S. Biles & Co. v. Elliotte (No. 2468):

W. H. Fitzhugh, of Memphis, Tenn., for appellants.

C. S. Dashiell, of Memphis, Tenn., for appellees.

In Elliotte v. W. S. Biles & Co. (No. 2469):

C. S. Dashiell, of Memphis, Tenn., for appellant.

W. H. Fitzhugh, of Memphis, Tenn., for appellees.

Before DENISON, Circuit Judge, and EVANS and SESSIONS, District Judges.

EVANS, District Judge. These three appeals were heard upon one record and may be disposed of in one opinion.

A. G. Moss and N. S. Bruce composed a partnership firm styled Merriman Bros. Auto Company, which did business in Memphis, Tenn. On December 9, 1910, Moss filed a petition in the District Court, alleging the insolvency of the firm, and prayed that it might be adjudged bankrupt. On the next day Bruce, the other partner, filed an answer denying the insolvency of the firm; but this answer was subsequently withdrawn, and on January 2, 1911, the adjudication was made. In due course C. H. Elliotte was elected and qualified as trustee of the bankrupts. The only property claimed to be assets of the bankrupts with which we are now concerned was three automobiles, one a Franklin, another a Pope Toledo, and another a Thomas Flyer. Pending certain litigation in the courts of Shelby county, Tenn., the details of which are not now material, Elliotte, the trustee in bankruptcy, filed a bill in the court below, in which a decree was sought adjudging him to be entitled to each of these cars as against Darragh, and to the Thomas Flyer as against W. S. Biles & Co., which last party we shall call Biles & Co. The defendants, by appropriate pleadings, set up their respective claims to the cars. Under an agreement of the parties the cars were sold. Biles & Co., on May 1, 1911, bought the Thomas Flyer for $3,000 and retained the money subject to the decision of this case, and Darragh bought the other two cars for $945 and retained the price on the same conditions. The court below decreed that Biles & Co. were entitled to retain only $2,600 and interest thereon out of the $3,000 in their hands, that the trustee was entitled to the remainder of the $3,000, and that the trustee was also entitled to recover from Darragh the $945. The costs were divided equally, and each party has separately appealed.

### Case No. 2467. Darragh's Appeal.

Wm. H. Darragh on or about November 1, 1910, at the request of N. S. Bruce, his nephew, and as surety of the bankrupts, signed three

of their notes each for $500, and due, respectively, on November 30, 1910, December 31, 1910, and January 31, 1911. No security was then given Darragh though it is claimed, but not proved to our satisfaction, that it was agreed at the time that if the first note was not paid at maturity security should be given. The first note was not paid by the bankrupts, and on December 1, 1910, they executed a deed of trust to John J. Darragh (brother of Wm. H.), as trustee, and thereby transferred to him the three automobiles as security for the payment of the notes described. The deed of trust contained a clause in this language:

"There is due and unpaid on the Thomas car above described a balance on purchase money and only the equity of the makers hereof in this car is conveyed."

This deed of trust was recorded on December 8, 1911.

There is much conflict in the testimony as to whether the bankrupts promised to give Wm. H. Darragh any security; but whether there was such promise or not, and whether it would be important if there had been, in fact no security was given until the deed of trust was executed on December 1, 1910. Manifestly this deed of trust was made to secure an antecedent indebtedness, and was not given for a present consideration. It was given within less than 10 days before the petition in bankruptcy was filed on December 9, 1910, and in terms recognized alike the existence and the priority of the lien for the balance of the purchase money due on the Thomas car. Under these circumstances it is too plain for argument or citation of authority that Darragh's claim to priority cannot be maintained, either against the trustee, Elliotte, or against Biles & Co., to the latter of whom was due the balance of purchase money on the Thomas car referred to in the deed of trust.

Consequently the judgment complained of by Darragh in case No. 2467 was proper, and must be affirmed.

### No. 2468.   Appeal of Biles & Co.

[1] While there is some obscurity as well as conflict in the testimony, we find the essential facts to be as follows:

In October, 1910, the bankrupts had ordered the Thomas car from its maker. It had been shipped by rail to Memphis, and the bill of lading with a draft for $3,100, the price of the car, attached, had been sent to the Union & Planters' Bank & Trust Company in that city. The car was not to be delivered to the bankrupts until the draft was paid. The bankrupts not being able to meet the draft, except to the extent of $500, called upon Biles & Co. for assistance, and the latter supplied the necessary $2,600. As part of the agreement upon which this was done Biles & Co. took from the bankrupts a bill of sale as follows:

"Memphis, Tenn., Oct. 22, 1910.

"For the consideration of twenty-eight hundred dollars, cash in hand, paid by W. S. Biles & Co. to Merriman Bros. Auto Co., the receipt of which is hereby acknowledged by the Merriman Bros. Auto Co., I hereby sell, transfer, and deliver to the said W. S. Biles & Co. one auto, free from all incum-

brances, described as the Thomas Flyer, four-door, seven-passenger touring car, No. 1076, motor 1099, trans. No. 1116, body No. 1064.

"Witness our signature on this 22d day of October, 1910.

"Merriman Bros. Auto Co.
"A. G. Moss.
"N. S. Bruce."

It was also agreed that the bankrupts might repurchase the car at the price of $2,800, and that agreement was put into effect when, also on October 22, 1910, the bankrupts executed to Biles & Co. a note for that amount, secured by a pledge of the car and a certain policy of insurance thereon. The note, including the contract of pledge, was in the very explicit language which follows:

"2,800.00.                                        Memphis, Tenn., 10—22, 1910.

"November 5th, after date, we promise to pay to the order of W. S. Biles & Co. twenty-eight hundred and no/100 dollars, for value received, and all attorneys' fees and other costs and charges properly incurred in the collection of this debt. Payable at Union & Planters' B. & T. Co., in Memphis, Tenn. As security for the payment of this note, and to secure any other indebtedness that may be in existence at maturity, from and to the parties as herein, collateral securities have been pledged herewith, to wit:

"One Thomas Flyer automobile, as per bill of sale attached.

"Insurance policy covering same, attached.

"And we agree, in the event of a decline in the market value of said collaterals, to deposit additional securities from time to time, in such sufficiency that the salable value of the entire collaterals shall be at least 20 per centum in excess of this specific debt. A failure to deposit additional collaterals as agreed, or to pay this note at maturity, shall be full and specific authority for the holder to sell the aforesaid collaterals, at public or private sale, with or without notice, the net proceeds thereof, in whole or in part. as may be necessary, to be applied toward the liquidation of this and other indebtedness herein contemplated.          [Signed]   Merriman Bros. Auto Co.
                                    "[Signed]   N. S. Bruce.
                                    "[Signed]   A. G. Moss."

Biles & Co. were then given possession of the car, and they retained it, though they put the car in the storage and sales garage of the bankrupts, as they did other cars owned and used by them. One object of this was to afford opportunity for demonstration and sale of the car. Efforts to sell the Thomas car were not successful before the bankruptcy. This situation continued until Darragh, without the knowledge or consent of Biles & Co., got possession of the car about December 8, 1910, from the bankrupts, one of whom was his nephew. In January, 1911, Biles & Co., through their replevin suit in the state court against Darragh, again got possession of the car, and held it when this action was brought by the trustee in bankruptcy in February, 1911. The note to Biles & Co., due November 5, 1910, was not paid by the bankrupts.

It is insisted by the trustee that the bill of sale and the collateral note, which were made on the same day and which we have inserted above, together constitute a mortgage, and nothing more, and that Biles & Co. lost all claim to priority thereunder because it was not recorded as required by the law of Tennessee. We have concluded, however, as already sufficiently indicated, that Biles & Co. became the owners of the car when the bill of sale was made to them, that they then got possession of it, that they sold it to the bankrupts,

and that the latter pledged the car and the policy of insurance thereon as collateral security for the payment of the note given for the price.

There is a plainly recognized difference between a mortgage and a pledge. In case of the former possession is not necessarily given to the mortgagee, while in the latter possession in the pledgee is essential in all cases. This is elementary. It is doubtless for that reason that a contract of pledge is not required to be recorded. This distinction is recognized in Tennessee, and the recording statute of that state (Shannon's Code, § 3749) in terms embraces "deeds of trust" and "mortgages," but not pledges. Crisp v. Miller, 5 Heisk. (Tenn.) 700, and other cases so hold.

[2] The form of contract in this instance clearly manifests the intentions of the parties, and we conclude that Biles & Co., being pledgees in possession of the pledged property, lost nothing by not recording their contract. We do not overlook the fact that the car was in the bankrupts' storage and sales garage, as were other cars of Biles & Co.; but the bankrupts only kept it as bailees, and not as owners. They also were interested in efforts to sell it in order to redeem it from the pledgees. Under the circumstances none of this was unlawful. Grange Warehouse Association v. Owen, 86 Tenn. 355, 7 S. W. 457; McClung v. Colwell, 107 Tenn. 592, 64 S. W. 890, 89 Am. St. Rep. 961; Johnson v. Smith, 11 Humph. (Tenn.) 400–404; Story on Bailments, §§ 297, 299.

We need not notice in detail other contentions of the parties, as these considerations lead to the modification of the decree in No. 2468, because it limited the right of Biles & Co. to retain only $2,600 and interest, when they were entitled to retain the amount the bankrupts stipulated in the collateral note to pay, to wit, $2,800, with interest thereon from November 5, 1910, to May 1, 1911, at which last date Biles & Co. bought the car under the stipulation between the parties.

The judgment, so far as appealed from in this case, is modified to the extent, first, of allowing W. S. Biles & Co. to retain out of the $3,000 in their hands the sum of $2,800, with interest thereon from November 5, 1910, to May 1, 1911; and, second, to the further extent of directing that the balance of the money then remaining in their hands be paid to C. H. Elliotte, trustee, with interest on such balance from May 1, 1911, until paid. As thus modified, the judgment, so far as appealed from in case No. 2468, is affirmed; but the appellants, W. S. Biles & Co., will recover their costs on this appeal. The case is remanded to the District Court, with directions to modify its judgment in conformity with this opinion.

### No. 2469. Appeal of Elliotte, Trustee.

What we have said in respect to the appeals in cases Nos. 2467 and 2468 applies to the appeal of Elliotte in case No. 2469, and leads to the conclusion that the decree complained of by the trustee in this case must be affirmed.