## In re DUNCAN & GOODELL CO.
### No. 56002.

District Court, D. Massachusetts.

July 10, 1936.

Bradley B. Gilman, of Worcester, Mass., for trustee.

George H. Mirick, of Worcester, Mass., for estate of Theodore T. Ellis, creditor.

BREWSTER, District Judge.

The referee's certificate has brought up for review his order, made in the course of the above proceedings, allowing in full a claim of the estate of Theodore T. Ellis in the amount of $92,560.07, being the amount alleged to be due on a guarantee, executed by the debtor in writing, of certain obligations of the Duncan & Goodell Realty Company, another corporation. The trustee objects to the allowance of this claim on the ground that the guarantee, upon which it is based, was an ultra vires act, and hence can form the basis for no legal rights against the debtor. The facts, as set forth in the referee's order, show that the claim arose under the following circumstances:

The debtor is a Massachusetts corporation, organized in 1887, "for the purpose of selling hardware and builders', machinists', and mechanics' supplies by wholesale and retail." It carried on business for many years at the corner of Pearl and Maine streets, in the city of Worcester, Mass. In 1921, it purchased real estate at the corner of Mechanics and Commercial streets, in Worcester. In 1925, another corporation, the Duncan & Goodell Realty Company, was organized with 2,000 shares of no par stock. This stock was found by the referee to have been paid for by the debtor, but was issued in the names of the various stockholders of the debtor, in proportion to their holdings in the debtor corporation. The officers and directors of the

new corporation were the same as those of the debtor. The realty company had no separate offices; it had no stationery; it paid its officers no salary; and, aside from its minute book, it kept no books but a check book. The new company was formed "to acquire, hold, manage, improve, lease, mortgage, buy and sell real estate." The real estate purchased in 1921 was then conveyed to the realty company. The sum of $325,000 was borrowed on a first mortgage from the Mechanic Savings Bank. This sum, however, proved insufficient, and an additional $100,000 was borrowed by the realty company from Ellis. This transaction forms the basis for the claim now under consideration. It appears that the money was obtained from Ellis at the request of Mr. Goodwin, the treasurer of both corporations, Mr. Scott, president of both corporations, and Mr. Bridgham, a director of both corporations. Ellis was unwilling to loan money to the realty company, unless the debtor should become responsible for its repayment. The realty company accordingly gave a note and second mortgage to Ellis, for the amount borrowed, and the debtor indorsed the note. At the same time the debtor also gave to Ellis its written guarantee of the payment of the note and the performance of all the conditions and covenants of the mortgage. The referee has found that the $100,000 loaned by Ellis was used in the erection of a building which, when completed, was occupied by the debtor as its new place of business. Subsequent relations between the debtor and the realty company appear to have been informally conducted. When the realty company needed money, cash was advanced by the debtor and deposited in the bank account of the realty company and paid out by the latter's check. The realty company had no source of income, except from the debtor, except that for a short period a store was let to another tenant. Against the sums so advanced the debtor was charged with rent at a rate of $36,000 a year. This was insufficient, and the balance due from the realty company to the debtor steadily increased. No formal lease was made from the realty company until some time in 1931. Shortly thereafter, the realty company made an agreement assigning the rent due under this lease to the first mortgagee. Surplus rents not needed to pay interest under the first mortgage, taxes, and water rates appear to have been held by the first mortgagee to the credit of the debtor's account, and on at least two occasions interest on the Ellis mortgage was paid from such funds by the first mortgagee at the request of the debtor.

Upon these facts the referee has ruled that the guarantee was not an ultra vires contract on the part of the debtor, and that the estate of Ellis is entitled to prove in full for sums now due thereunder. I am of opinion that this ruling of the referee was correct.

█ Since the debtor is a corporation organized under the laws of Massachusetts, the question of the scope of its corporate powers must be determined by the law of Massachusetts. Equitable Life Assurance Society of the United States v. Brown, 213 U.S. 25, 29 S.Ct. 404, 53 L.Ed. 682. In Teele v. Rockport Granite Company, 224 Mass. 20, 112 N.E. 497, 498, the Supreme Court of Massachusetts, speaking through Chief Justice Rugg, discusses in a general way the powers of a Massachusetts corporation. After pointing out that a corporation, unlike a natural person, is restricted to such powers as are conferred upon it, the court goes on to say: "It may, however, enter into contracts and engage in operations which, although not expressly nominated in its charter, are reasonably incident to its objects and subsidiary to its chief purpose. Whatever transactions are fairly incidental or auxiliary to the main business of the corporation and necessary or expedient in the protection, care and management of its property, may be undertaken by the corporation and be within the scope of its corporate powers."

█ The powers of an ordinary business corporation do not include, under this rule, the power to guarantee the obligations of another corporation, unless it can be shown that such a power is fairly incidental or auxiliary to the main business of the corporation and is necessary or expedient in the protection, care, and management of its property. Davis v. Old Colony Railroad Co., 131 Mass. 258, 41 Am.Rep. 221; Limerick Mills v. Royal Textile Co., 288 Mass. 479, 193 N.E. 9; Wm. Filene's Sons Co. v. Gilchrist Co. (C.C.A.) 284 F. 664.

█ In Massachusetts, as elsewhere, however, a business corporation has power to guarantee the obligations of a subsidiary, because such a guarantee may be necessary in order to protect the interest of the corporation in the subsidiary.

In American Surety Company v. 14 Canal Street, Inc., 276 Mass. 119, 176 N. E. 785, 788, a wholly-owned subsidiary of the defendant had been sued and its property attached. The plaintiff was surety on a bond given to release this property from the attachment. The plaintiff became surety upon this bond in reliance upon an agreement of the defendant to indemnify it in case of loss. The plaintiff was forced to pay a judgment. The court held that it was entitled to recover the amount so paid from the defendant. The court said:

"That general rule is not applicable to the facts found in the present case. The execution by J. M. Mann, Inc., of the agreement to indemnify the plaintiff against loss on account of this bond signed by the Fontaine Furniture Company, its wholly owned subsidiary, did not constitute carrying on the business of a surety or indemnity company within the meaning of those words in the charter of J. M. Mann, Inc. The execution of the indemnity agreement by J. M. Mann, Inc., was a legal and proper act by the latter in the protection of its property acquired through its ownership of the entire stock of the New Hampshire corporation. We are of opinion that, upon the facts found and the entire evidence, the contract of indemnity was incidental to the business authorized by the charter of J. M. Mann, Inc."

And this power to guarantee the obligations of other corporations has been extended to other cases, where such a guarantee was necessary for the protection of the property of the guarantor. Thus, in Edwards v. International Pavement Company, 227 Mass. 206, 116 N.E. 266, a corporation holding a patent on a process of manufacturing asphalt blocks, whose income was derived from royalties on the process from a group of seven licensees, was held empowered to guarantee obligations of the licensees so as to enable them to import the asphalt needed to make the blocks.

It is the contention of the trustee that the facts of the present case are distinguishable from the situation in American Surety Co. v. 14 Canal Street, supra, in that the stock of the realty company was not owned by the debtor, but was owned by the stockholders of the debtor in the same proportion as their holdings in the debtor corporation. In view of the fact that the realty company was formed for the sole purpose of holding the land for the debtor and in view of the identity, not only of the officers but of the directors and stockholders, of the two corporations, it is doubtful whether this difference is of any importance. In any event, the referee has found in this case that the stock of the realty company, while issued in the names of the various stockholders of the debtor, was in fact paid for by the debtor corporation. A strong presumption is raised that the shares so issued were held on a purchase-money resulting trust for the benefit of the debtor corporation itself. The doctrine of purchase-money resulting trusts, while more often applied in cases of real estate, is equally applicable to transfers of personal property, the purchase price for which is paid by one, and title to which is taken in the name of another. Vigne v. Vigne, 98 N.J.Eq. 274, 130 A. 816. As stated in Perry on Trusts (6th Ed.) § 130:

"The rule embraces personal property as well as real estate; and if a man purchases a bond, annuity, stock, mortgage, or other personal interest, in the name of a third person, the equitable ownership results to the person from whom the consideration moves; * * *."

For an American case where the doctrine was applied to a purchase of shares of stock, see McClung v. Colwell, 107 Tenn. 592, 64 S.W. 890, 89 Am.St.Rep. 961.

The interest of the present debtor in the realty company, therefore, does not differ substantially from that of a corporation in a wholly-owned subsidiary, and the present case is governed by American Surety Co. v. 14 Canal Street, Inc., supra.

In view of the foregoing I do not deem it necessary to consider the other grounds for the order which the referee discusses in his certificate.

The referee's order is affirmed.