## M. O. Allmon et al., Appellees, v. Salem Building & Loan Association, Appellant. William A. Mills, Trustee.

1. BUILDING AND LOAN ASSOCIATIONS, § 23*—*when act of director in own behalf notice to association*. The fact that a director of a building and loan association assigned stock owned by him as collateral security, without the transfer being recorded on the books of the association as the by-laws required, does not charge the association with notice of the assignment, since the director acted for himself and not the association in the transaction.

2. BUILDING AND LOAN ASSOCIATIONS, § 34*—*when evidence not sufficient to show notice of assignment of stock*. The evidence in an action against a building and loan association to recover the matured value of shares paid to the recorded holder without requiring the surrender of his certificate, which had been previously assigned to the plaintiff as collateral security without being recorded on the books of the association as its by-laws required, *held* not to show that the association had notice of the assignment.

3. BUILDING AND LOAN ASSOCIATIONS, § 34*—*when association liable to unrecorded holder of shares as collateral security*. A building and loan association which paid, without notice of the assignment of stock as collateral security, the matured value thereof to the assignee, the holder of record is not answerable to the assignee, where the assignment was not recorded on the books of the association as its by-laws required.

4. BUILDING AND LOAN ASSOCIATIONS, § 33*—*when association liable to unrecorded holder of shares as collateral*. Where a building and loan association without notice of an assignment of a certificate of stock as collateral security, which was not recorded on the books of the association as its by-laws required, paid the matured value thereof to the assignor, the holder of record, without requir-

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

ing a surrender of the certificate, and the assignee, on learning of the payment, did not protest to the association, demand restitution nor give any notice leading it to believe that he intended to hold it liable for the amount of the payment, but subsequently accepted interest on the secured debt from the assignor, and waited nineteen months before bringing action against the association, *held* guilty of · laches sufficient to bar a recovery.

Appeal from the Circuit Court of Marion county; the Hon. THOMAS M. JETT, Judge, presiding. Heard in this court at the October term, 1914. Reversed and remanded with directions. Opinion filed May 1, 1915.

KAGY & VANDERVORT, for appellant.

NOLEMAN & SMITH, for appellees. .

MR. JUSTICE HIGBEE delivered the opinion of the court.

On April 15, 1913, M. O. Allmon, Nellie H. White, Ida M. Pullen and Tina V. Cole, appellees, filed their bill in chancery in the Circuit Court of Marion county, Illinois, against appellant and William A. Mills, as trustee in bankruptcy for John S. Stonecipher, bankrupt, asking that appellant be decreed to issue to them forty-six shares of the matured capital stock of said association of the par value of $4,600 or to pay them the principal sum of $4,000 and certain accrued interest, said to amount to the sum of $500, and for general relief.

The facts upon which the suit is based, as set forth in the bill, were in the main not disputed on the trial and are substantially as follows: On August 12, 1904, H. L. Allmon, the father of appellees, loaned to John S. Stonecipher the sum of $2,000 and took his note of that date for said sum due one year after date, with interest at the rate of six per cent. per annum and afterwards, on September 10, 1906, said Allmon loaned said Stonechiper a like amount and took his

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Vol. CXCIV 15.

note for $2,000 of that date, due six months after date, also with interest at the rate of six per cent. per annum. At the time the second note was given, Stonecipher assigned and delivered to said Allmon thirty-six shares of stock of said appellant building and loan association, to secure the payment of said notes. H. L. Allmon died intestate February 5, 1908, and appellees, as his heirs at law, became the owners of the notes and received the certificates of stock. The notes were never paid but Stonecipher paid the interest on the same each year up to and including the year 1911. The certificates of stock of the building association delivered to Allmon as aforesaid each bore on its face the statement that the same was "transferable on the books of the association in person or by attorney upon surrender of this certificate." None of the certificates of stock were so transferred but remained upon the books of the association in the name of said Stonecipher. Section 4 of article 6 of the charter of the appellant building and loan association which was offered in evidence is as follows: "Any member of this association may transfer to any other person any or all of the unredeemed shares held by him or her on which there are no arrearages of dues and fines, on payment to the association of twenty-five cents for each share transferred. All transfers shall be made in the presence of the secretary who shall record them in a book purchased and kept by him for that purpose alone; and they shall also be indorsed on the certificate transferred. In each case the transferee shall be entitled to all the privileges of the original holder; but no transfer shall be valid and complete until the foregoing provisions have been complied with."

In December, 1911, M. O. Allmon, who also represented the other owners of the four certificates covering the stock in question, presented the same to Mr. Larimer, the secretary of the association, and made inquiry concerning them and as to whether Mr. Stone-

cipher owned them.   The secretary referred to his
books and told him that the certificates had been paid
as they matured to Mr. Stonecipher; that the amount
due on sixteen of the shares had been paid to Stone-
cipher on June 18, 1908; on ten shares, January 28,
1909; and on the remaining ten shares, May 15, 1909.
M. O. Allmon testified that he told the secretary at the
time referred to that he and the other appellees held
the certificates as collateral security, but the secretary
denied this statement and said the fact was not brought
to his knowledge until this suit was instituted.  Stone-
cipher at the time the money was borrowed was con-
sidered a man of large means, and at the time he
received the money for the stock from the secretary was
a director of the building and loan association.   On
January 28, 1913, Stonecipher was adjudged a bank-
rupt but appellee, M. O. Allmon who held the certifi-
cates of stock, stated he considered the financial con-
dition of Mr. Stonecipher good up to the first of the
year 1912; that up to that time he thought the notes
could be collected directly from Mr. Stonecipher and
that he collected the last interest on them on Decem-
ber 10, 1911.

The court found the equities to be with appellees,
the decree finding that the certificates were held by
and hypothecated with H. L. Allmon in his lifetime
and have been so held by his heirs since his death;
that each of said certificates was assigned by indorse-
ment on the back thereof by the said Stonecipher at
the time of its delivery; that said association had paid
the certificates upon their maturity to said Stone-
cipher without requiring the surrender of any or either
of the same; that by so paying over to Stonecipher
the amount due on said several shares of stock with-
out requiring him to surrender the certificates for can-
cellation, the association violated the trust cast upon it
and became and was responsible to appellees for any

injury sustained by reason of such misconduct; that it was the duty of the association to require the surrender of said certificates upon the payment of the amount due on said shares of stock; that at the time said payments were made to said Stonecipher, the association had notice that said certificates had been assigned to and hypothecated with H. L. Allmon in his lifetime and were then hypothecated with and held by appellees as security for said notes, and that said Stonecipher had no interest therein. And it was decreed that appellant association pay to appellees, within forty days from the date of the decree, the sum of $3,600, and that upon payment of said sum they surrender said certificates to said association.

We find nothing in the proofs to show that the association knew of the transfer by delivery and indorsement of the certificates by Stonecipher to H. L. Allmon prior to December, 1911, a date long after the matured value of the same had been paid to Stonecipher. While it is true that Stonecipher knew of the transaction and that he was a director of the association at the time payment was made, yet his knowledge of the facts could not be charged against the association, as in acquiring such knowledge he was not acting for the association but for himself, and his actions as a whole were in effect hostile to the association. *Gilkeson v. Thompson*, 210 Pa. 355, *Aycock Bros. Lumber Co. v. First Nat. Bank of Dothan*, 54 Fla. 604; *Teagarden v. R. B. Godley Lumber Co.*, 105 Tex. 616. Notice to a director of a bank acquired by him not in the bank's business but privately is not notice to the bank. *Black v. First Nat. Bank*, 96 Md. 399. In *Home Savings & State Bank v. Peoria Agricultural & Trotting Society*, 206 Ill. 9, it was held that knowledge obtained by a director of a bank when he was negotiating for the purchase of a lot for himself, that the title was held in trust, did not of itself charge the bank, which had a judgment against the holder of the legal

title, with notice so as to defeat its levy° and sale of the land on such judgment. We conclude that the facts in this case do not show circumstances which warrant the holding of the decree that, at the time of the payment of the amounts due on the certificates to Stonecipher, appellant had notice that they were held by any one else as collateral.

The statute in relation to homestead loan associations (Hurd's Rev. St. 1912, ch. 32, par. 83, sec. 6a, J. & A. ¶ 2598) under which appellant was organized, provides: "The shares shall be deemed to be personal property in the hands of the members, transferable upon the books of the association in the manner provided in the by-laws;" and the by-laws provide, as above set forth, that all transfers shall be made in the presence of the secretary who shall record them in a book purchased and kept by him for that purpose alone, and shall be indorsed on the certificate transferred; and that no transfer shall be valid and complete until the foregoing provisions shall be complied with. Notwithstanding these provisions, we find the law early settled by the decisions in this State, and not since disturbed, that as between the assignor and assignee, a transfer on the books of the secretary was not necessary. *Wetherell v. Thirty-first St. Building & Loan Ass'n,* 153 Ill. 361. But it has also been held that in the absence of such action neither party could set up a transfer by indorsement and delivery as against the rights of third parties or the corporation. In the case of *Kellogg v. Stockwell,* 75 Ill. 68, quoted with approval in many later cases, it is stated: "The provision in the charter that shares are transferable only on the books of the company, is designed for the protection of the corporation, or perhaps a purchaser without notice." It was held, however, in that case that as between the vendor and vendee, a sale and transfer would be good without being entered upon the company's books and would be enforced in equity,

that is, in effect, that it was a good equitable transfer of the stock. In *People's Bank of Bloomington v. Gridley*, 91 Ill. 457, in speaking of transferring stock as a pledge, it is said: "This may be effected by a formal or even a blank indorsement or assignment of the certificate, and delivery of the same to the assignee. Nothing more is ordinarily required to complete the contract as between the immediate parties. But, as to third parties, something more is commonly required. Some such visible or ascertainable index of the change of ownership as will naturally put those interested in the question upon inquiry, and thus lead them to correct information upon the subject, must exist." See also, *Otis v. Gardner*, 105 Ill. 436. The difference between a share of stock and a certificate of stock must be borne in mind, as the latter is only evidence of the ownership of the former. "A share of stock is defined to be a right which its owner has in the management, profits and ultimate assets of the corporation. * * * The title to stock is created by registry in the books of the corporation. The certificate is not the stock itself, but only evidence of the ownership of the stock. It has value only as such evidence, and apart from the shares which it represents it is utterly worthless. It is not essential, and a registered stockholder may exercise all his privileges without it. He has power to transfer his stock, to receive dividends and to vote, and he is individually liable as a stockholder although without the usual voucher in the form of a certificate." *Colton v. Williams*, 65 Ill. App. 466.

The conclusion must therefore be reached in this case, that notwithstanding the transfer of the certificates by Stonecipher to Almon constituted an equitable assignment of the stock to the latter as between the parties, yet the failure of the parties to cause the transfer to be made in the presence of the secretary and recorded in the books of the association, as re-

quired by the constitution, and the absence of all notice to the company of the transfer of the stock, justified the secretary in relying on the evidence of ownership shown by the book of the association kept for that purpose, and authorized him to pay the matured value of the shares to Stonecipher and protected the association from loss by reason of such payment.

We are further of opinion that appellees were guilty of laches in not seeking to establish their claim to the shares of stock in question at an earlier date. Stonecipher being a man supposed to have large property interests, appellees were not disturbed when they discovered, through M. O. Allmon in December, 1911, that the matured value of the stock had been paid to the former as it came due, the last block of shares having been paid more than two years prior to that time. At that time M. O. Allmon neither protested against the action of the association nor did he demand restitution, or take any steps or give any notice that would lead the association to believe appellees intended to hold it liable for the amount paid to Stonecipher on said shares, and at that time the notes, it is claimed the shares were to secure, were long since due. M. O. Allmon testified as above stated that he collected interest from Stonecipher on December 10, 1911, and that he considered him financially good in the early part of 1912. In fact no steps appear to have been taken to enforce appellees' claim to the shares of stock in question until after Stonecipher had been adjudged insolvent, and this suit was not brought until about fifteen months after appellees had learned of the payment made by the secretary of the association to Stonecipher of the amount due on the shares. Had appellees protested at once when they learned of such payment and notified appellant they expected to hold it responsible for the amount paid, the latter could have taken steps to protect itself, if it so desired, at a time when Stonecipher was still apparently in sound finan-

cial condition. It would be manifestly inequitable to permit appellees, with full knowledge of the facts concerning the payment, to act as though they acquiesced therein and thereby lead appellant to believe that no claim would be made upon it by them on account of the certificates held by them, and then, after the unexpected had happened and the man whom they considered financially good had become insolvent, assert and enforce a claim for payment of the shares in question from appellant, when it was too late for the latter to protect itself as it might otherwise have done. Appellees were guilty of such laches in the respect above stated as should bar them from the right of recovery under the circumstances of this case. The decree of the Circuit Court will be reversed and the cause remanded with directions to the court below to dismiss the bill for want of equity.

*Reversed and remanded with directions.*