# XAVIER L. OTIS, Admr.

*v.*

## JEFFERSON GARDNER *et al.*

*Filed at Ottawa January 31, 1883.*

1. ASSIGNMENT—*of stock in corporation—when passes equitable title.* The charter of a private corporation provided that the stock of the company should be transferable in such manner as the directors might determine, and the by-laws of the company provided that the secretary should keep a book upon which all transfers of stock should be made by the holder or holders, or by his or their attorney, duly constituted, in writing. The legal holder of certificates of stock in the company, on a loan thereof, transferred and delivered the same, with a blank assignment and power of attorney indorsed thereon, to the borrower, which power of attorney authorized the assignee to have the stock transferred on the books of the company, but no such transfer was ever made on the books. These certificates, in this condition, were transferred by the borrower as collateral security for a note given for the loan of money by a third person, which note was indorsed by the borrower of the certificates: *Held,* that while the legal title never passed by the transfer of the certificates, for want of an assignment on the books of the company, yet, after the pledge by the holder under such blank indorsement to an innocent party, without notice of the rights of the original holder, the pledgee acquired an equitable title to the same, as a security for the money loaned by him, of which he could not be divested by the original owner or his administrator.

2. SAME—*assignor can have no relief against equitable transfer of stock.* A court of equity will give the assignor no relief against the *bona fide* sale of stock in a corporation merely for the reason that the assignee may have failed to have the stock transferred to him upon the books of the corporation, as required by law. It is no concern of the assignor whether the assignee ever becomes invested with the legal title, or the right of membership in the corporation. Such stock may be regarded as a *chose in action,* the equitable title of which, as between the parties, may be transferred without observing the requirements of the charter or by-laws of the company as to the mode of transfer so as to pass the legal title.

3. SAME—*assignee may sell or pledge, if not limited.* Where certificates of stock in a private corporation are assigned in blank, with a power of attorney authorizing the transfer of the stock on the books of the corporation, with no limitation as to their use by the assignee, the assignee or holder will be authorized, as to persons dealing with him without notice of any defect of power in him, to make any legitimate use of them a rightful owner might,

and a sale or pledge of such certificates by him, in the usual course of business, to a party taking in good faith for value, will be valid and binding on the original owner or assignor, though the legal title may not have passed, for want of a transfer on the books of the corporation.

4. CONTRACT—*where one of two persons must suffer loss.* If the owner of property or *choses in action* voluntarily clothes another with the *indicia* of ownership, by which the latter is enabled to sell or pledge the same, for his own benefit, to an innocent party for value, the former can have no relief against such act to the prejudice of the pledgee or vendee. Where one of two or more persons must suffer loss, it must fall upon him whose conduct made it possible for loss to occur.

5. COSTS—*discretionary, in chancery.* Under the statute the costs in a chancery suit are within the discretion of the court.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. MURRAY F. TULEY, Judge, presiding.

Messrs. HERBERT, QUICK & MILLER, for the appellant, made the following among various other points:

The transaction between Sheridan and Bowen is at most only a power to make a transfer of the stock, and is not a transfer until executed. *Boyd* v. *Rockport Mills*, 7 Gray, 406.

No title to the stock passes until a transfer has been made upon the books of the company, as the stock was, by the charter and by-laws of the company, transferable only on its books. *Fisher* v. *Essex Bank*, 5 Gray, 373 ; *Stebbins* v. *Phœnix Fire Ins. Co.* 3 Paige, 350 ; *Sabin* v. *Bank of Woodstock*, 21 Vt. 353 ; *Pinkerton* v. *Railroad Co.* 42 N. H. 424 ; *Shaw* v. *Spencer*, 100 Mass. 382 ; *Pittsburg and Connellsville R. R. Co.* v. *Clarke*, 29 Pa. St. 146 ; *Union Bank* v. *Laird*, 2 Wheat. 391 ; *Kellogg* v. *Stockwell*, 75 Ill. 68 ; *People's Bank* v. *Gridley*, 91 id. 457 ; 1 Am. Railway Cases, *154, Redfield's note.

The transfer on the books is the originating and essential act in the change of title. *Oxford Turnpike Co.* v. *Bunnell*, 6 Conn. 552 ; *Marlborough Manf. Co.* v. *Smith*, 2 id. 579 ; *Northrop* v. *Newtown Turnpike Co.* 3 id. 544 ; *Dutton* v. *Con-*

*necticut Bank*, 13 id. 493; *Pittsburg and Connellsville R. R. Co.* v. *Clarke*, 29 Pa. St. 146; *Union Bank* v. *Laird*, 2 Wheat. 390.

Certificates of stock have none of the qualities of negotiable paper,—they are mere *choses in action. Shaw* v. *Spencer*, 100 Mass. 382; *Sewell* v. *Boston Water Power Co.* 4 Allen, 282; *Mechanics' Bank* v. *New York and New Haven R. R. Co.* 13 N. Y. 599; *Weaver* v. *Borden*, 49 id. 286; *Covell* v. *Tradesmen's Bank*, 1 Paige, 131; *Kellogg* v. *Stockwell*, 75 Ill. 68; *People's Bank* v. *Gridley*, 91 id. 457.

The certificates carried notice to Gardner that the title to the stock was in Wait. *Anon.* Freeman's Ch. 137; *Vattier* v. *Hinds*, 7 Pet. 252; *Shaw* v. *Spencer*, 100 Mass. 382; *Sergeant* v. *Ingersoll*, 7 Pa. St. 340.

The title which Bowen had, appearing and being but an equitable one, Gardner could take no greater interest than Bowen had, and took subject to all the infirmities of Bowen's title. *Poillon* v. *Martin*, 1 Sandf. Ch. 569; *Maybin* v. *Kirby*, 4 Rich. Eq. 105; *Fortier* v. *Darst*, 31 Ill. 212; *Walker* v. *Dement*, 42 id. 272; *Olds* v. *Cummings*, 31 id. 188; *Sumner* v. *Waugh*, 56 id. 531; *Covell* v. *Tradesmen's Bank*, 1 Paige, 135; *Stebbins* v. *Phœnix Fire Ins. Co.* 3 id. 350; *Cutts* v. *Guild*, 57 N. Y. 229; *Weaver* v. *Borden*, 49 id. 286; *Schafer* v. *Reilly*, 50 id. 61; *Green* v. *Warnick*, 64 id. 220.

Where the equities of the parties are equal, the legal title must prevail. Story's Eq. Jur. sec. 64.

Costs are never allowed against one suing as administrator, or otherwise in *auter droit*, except under very special circumstances. 1 Hoffman's Ch. Pr. 73; *Goodrich* v. *Pendleton*, 3 Johns. Ch. 520.

Mr. HOWARD HENDERSON, for the appellees:

Where the owner of certificates of stock indorses them in blank, and allows them to fall into the hands of an innocent holder for value, the original owner will not be allowed to

reclaim them. (*Leavitt* v. *Fisher*, 4 Duer, 1; Field on Corporations, 128; *Fatman* v. *Lobach*, 1 Duer, 354.) And if he, by his voluntary act, through misplaced confidence, confers the apparent right of property in stock upon a third party, a *bona fide* purchaser of such stock from such party will be protected against any secret trust in favor of the real owner. *Bank* v. *Lanier*, 11 Wall. 369; *Bridgeport Bank* v. *New York and New Haven R. R. Co.* 30 Conn. 270; *Bridgeport Bank* v. *Schuyler et al.* 34 N. Y. 30; *Weaver* v. *Borden*, 49 id. 288; Field on Corporations, 148, sec. 133.

A provision requiring transfers of stock to be made on the books of the corporation, is solely for the protection of the corporation, and does not prevent title from passing by indorsement in blank, and delivery of the stock certificate. *Kartright* v. *Buffalo Commercial Bank*, 22 Wend. 347; *McNeil* v. *Tenth National Bank*, 46 N. Y. 33; *Smith* v. *American Coal Co.* 7 Lans. 317; *Leitch et al.* v. *Wells et al.* 48 N. Y. 605; *Chambersburg Ins. Co.* v. *Smith*, 11 Pa. St. 120; *Stone* v. *Hackett*, 12 Gray, 231; *Salsbury Mills* v. *Townsend*, 109 Mass. 121; *Choteau Spring Co.* v. *Harris*, 20 Mo. 387; *Duke* v. *Cohawba Nav. Co.* 10 Ala. 82.

Mr. CHIEF JUSTICE SCOTT delivered the opinion of the Court:

Sheridan Wait, in his lifetime, was the owner of one hundred shares of the capital stock of the Calumet and Chicago Canal and Dock Company, of the par value of $10,000, represented by certificates issued to him. Written on the back of each certificate was a blank assignment and power of attorney, that would authorize the assignee to have the stock represented by such certificates formally transferred to him on the books of the company. On the 16th day of March, 1875, Sheridan Wait indorsed the certificates by signing his name below the blank assignment and power of attorney, and then delivered them to Chauncey T. Bowen, and took therefor his written receipt, in which it is recited, "which said one

hundred shares of stock I have borrowed of him, and agree to return on demand." Concerning the use Bowen might make of such stock the receipt is silent, nor does the use to be made of it by the borrower appear from any testimony in the case. Afterwards, on the 9th day of November, 1875, James H. Bowen, being indebted to Jefferson Gardner on two promissory notes, each for $4262.25, for borrowed money, pledged these certificates of stock as collateral security for the payment of such notes, and delivered them to Gardner, indorsed in blank, as they had been received by Chauncey T. Bowen. As the notes of James H. Bowen were indorsed by Chauncey T. Bowen, he was, of course, liable for the indebtedness to Gardner. Neither the blank assignment nor the power of attorney, which was all one instrument, had ever been filled up. It does not appear the notes of Bowen have ever been paid, and since they were pledged these certificates have been held either by Gardner or his agent for him. Both the maker of the notes and the indorser are insolvent, and the only security Gardner has for his claim, either on the maker or the indorser, is the stock pledged for its payment. Since the death of Sheridan Wait, the original owner of the stock, his administrator, Xavier L. Otis, has demanded the stock of Chauncey T. Bowen, and also made application to the company to have the stock transferred to him on the books of the corporation, and failing to obtain it, he thereupon exhibited his bill in the circuit court of Cook county, making Chauncey T. Bowen, the Calumet and Chicago Canal and Dock Company, Jefferson Gardner, and George Van Zant, defendants. The bill asked for a decree that such stock be declared to have belonged to the intestate at the time of his death, and to now constitute a part of his estate; that the old certificates be canceled, and that new certificates be issued by the company, and placed on the books of the corporation in the name of complainant, and that Gardner, Van Zant and Bowen be enjoined from negotiating or interfering with such

stock. The corporation and Chauncey T. Bowen failing to answer, they were defaulted, and a decree *pro confesso* rendered as to them. Gardner and Van Zant answered the bill, stating the principal facts, about which there is no dispute, and for himself Gardner says, that at the time the notes and certificates were delivered to him by James H. Bowen, the certificates had written on the back the usual assignment, in blank, with power of attorney to transfer the stock on the books of the corporation, which was signed by Sheridan Wait, and that he received such certificates as collateral security for the debt of Bowen, in the usual course of business, without notice of the prior rights or equities of any person in such stock, and that he believed then, and does now believe, that Bowen had full right and authority to transfer to him the stock in question. On the hearing the circuit court found complainant was not entitled to relief, and dismissed his bill at his costs, and ordered execution therefor. That decree was affirmed in the Appellate Court, at the costs of complainant, to be paid in due course of administration. Afterwards, and at the same term, on the attention of the court being called by defendant's counsel to the fact the circuit court had inadvertently awarded execution against the administrator for costs, that court so amended its judgment that the decree of the circuit court should stand affirmed in all respects except as to awarding execution for costs against such administrator, which part of the decree was reversed, and it was then further ordered that each party pay one-half the costs in the Appellate Court. Complainant brings the case to this court on appeal.

The act incorporating the Calumet and Chicago Canal and Dock Company provides the stock shall be transferable in such manner as the directors shall determine, and section 12 of the by-laws of the company provides the secretary shall keep a book for the transfer of such stock, upon which all transfers of stock must be made by the holder or holders, or

by his or their attorney, duly constituted, in writing. The stock involved in this suit was not in fact transferred on the books of the corporation, either by the party to whom it was issued, or his attorney, in writing, duly authorized, and the argument for relief proceeds on the ground there never was any transfer of the shares of stock by the original owner, and hence the title never passed from him. That may be true as to the legal title, and yet complainant, who simply represents the intestate, may not be entitled to the relief asked by his bill. Undoubtedly the rightful possession of the certificates, with the blank indorsement and power of attorney thereon, would give the holder authority to fill up the blanks, and have the stock transferred to himself on the books of the corporation. Had that been done, it would have passed the legal title to the assignee. The effect of what was done was to place the equitable title to the stock in the assignee, and if it was done for a valuable consideration it will surely be obligatory on the assignor, if living. In such cases it is a matter of no concern to the assignor whether the assignee ever avails of the power of attorney embodied in the assignment to have the stock transferred to him on the books of the corporation, so that he may become the legal as well as the equitable owner. Equity will certainly give the assignor no relief against the *bona fide* sale of stock in that way, although the assignee may never choose to have the stock transferred to him under the by-laws of the corporation. What may be the position of the assignee of such stock to the corporation, is a question not involved in the present decision. It may be, as was said in *Laing* v. *Burley*, 101 Ill. 591, the corporation might not be compelled to admit him to the privilege of membership,—but it is a matter in which the seller can have no interest. Here the question is, what is the effect of the transfer of the stock, not upon the books of the corporation, but by mere assignment in writing? It is apprehended that, as between the assignor and assignee, it

would be a binding contract, against which the assignor would
not be entitled to relief, any more than he would be in case
of the sale of anything else made assignable by law, although
imperfectly done. · This can hardly be regarded as an open
question in this State since the decision of this court in
*Kellogg* v. *Stockwell,* 75 Ill. 68. It was there expressly ruled,
that the stock owned by a party in an incorporated company
may be regarded similar in its nature to a *chose in action*, the
equitable title of which, as between the parties, may be trans-
ferred without observing the requirements of the charter or
by-laws of the company. Precisely the same doctrine was
held in *Laing* v. *Burley, supra.* The principle declared by the
cases cited certainly has for its support both reason and the
weight of authority. The case of *People's Bank* v. *Gridley,*
91 Ill. 457, cited with so much confidence by counsel for
complainant, does not militate against this view of the law.
The case of *Kellogg* v. *Stockwell* was cited in the opinion of
the court, and the doctrine it declares, that as between the
vendor and the vendee a sale and transfer of such stock will
be good without being entered on the company's books, and
will be enforced in equity, was not impaired in the least. Its
principle was fully stated, and the case then being considered
was distinguished. In the *Bank case* it was expressly said
there was no question between a vendor and vendee, or pledgor
and pledgee, but the contention was between two parties hav- ·
ing equally meritorious claims against the owner of the stock,
each claiming a prior lien over the other. But here the
question made arises in like manner as it would between a
pledgor and pledgee or vendor and vendee. The intestate
placed the certificates in the hands of Chauncey T. Bowen,
with a blank assignment written thereon, authorizing an
absolute transfer of the stock to the assignee, under the
by-laws of the company. The exact use the assignee should
make of the stock does not appear from anything in the
record, but as the use he might make of it was in no way

limited by the terms of the assignment, it is reasonable to presume the assignee was authorized to make any legitimate use of it that a rightful owner might,—that is, he might sell it or pledge it, in the usual course of business. That was done in this case. It was pledged to Gardner, in the usual course of business, as collateral security for the indebtedness of the holder, and was taken in good faith, without the slightest knowledge that any one other than the pledgor claimed or had any interest in the stock represented by the certificates. As has been seen, the certificates of stock were placed in the hands of Bowen by the intestate in such condition they could be readily sold or hypothecated by him, and if his assignee made an improper use of them, the assignor, if living, could get no relief against that which he deliberately authorized to be done, if it would affect injuriously an innocent purchaser for value, and his personal representative can have no relief that could not be granted on a like bill by the intestate, if living. The principle is, that when one of two or more persons must suffer loss, upon him whose conduct made it possible for loss to occur should the consequences ultimately rest.

The costs, under the statute, in a chancery case, are within the discretion of the court, and the division of the costs made by the Appellate Court seems both just and reasonable. The judgment of the Appellate Court is not open to the criticism made upon it,—that it awarded execution for costs against complainant, suing as administrator on behalf of the estate. It did no such thing. In the first place, all the costs were adjudged against complainant, to be paid in due course of administration. By a subsequent order, made at the same term of the court, it was adjudged complainant should only pay one-half of the costs, but no execution was awarded against him at that or any other term by the Appellate Court.

No reason appears why the judgment of the Appellate Court should not be affirmed, and it is so done.

*Judgment affirmed.*