[Civ. No. 2611.   Second Appellate District, Division One.—January 28, 1919.]

## HELLMAN COMMERCIAL TRUST AND SAVINGS BANK (a Corporation), Respondent, v. LE ROY ARMSTRONG, Appellant.

PROMISSORY NOTE—ACTION BY PLEDGEE—ASSIGNMENT—EVIDENCE.—In an action by a bank as pledgee of a promissory note, the production in evidence by the plaintiff of an instrument in due form, whereby another bank, which formerly owned the note sued on, purported to transfer to the plaintiff all its notes and assets, was sufficient proof of plaintiff's ownership.

ID.—PLEDGE AGREEMENT—OBLIGATIONS SECURED BY.—A statement in a promissory note executed to a bank to the effect that the maker pledged as collateral security for the payment of this "or any other liability of mine to said bank when due or to become due or may be hereafter contracted," the promissory note sued on and certain shares of stock described, was sufficient to cover past due obligations.

ID.—DEFENSE OF MAKER OF PLEDGED NOTE.—The maker of a note held as a pledge to secure the payment of other notes is not concerned with the manner in which those other notes were acquired by the pledgee, in the absence of any claim that the maker of the latter notes had any ground of defense against them.

ID.—PLEDGEE NOT AN ASSIGNEE FOR COLLECTION.—A pledgee of a promissory note is not to be regarded merely as an assignee for collection, but is by reason of his interest as pledgee an actual holder for value.

ID.—NEGOTIABILITY OF NOTE SECURED BY COLLATERAL.—The bare fact that the pledged note was itself secured by a pledge of shares of stock given by the maker to the payee, even if known to the plaintiff, did not affect the negotiability of the note.

APPEAL from a judgment of the Superior Court of Los Angeles County.  Gavin W. Craig, Judge.  Affirmed.

The facts are stated in the opinion of the court.

J. H. Shankland for Appellant.

Benjamin E. Page and Arthur C. Hurt for Respondent.

Emmet H. Wilson, *Amicus Curiae.*

CONREY, P. J.—This action was brought by respondent to recover judgment against appellant on a promissory note made and executed by appellant to one E. E. Hewlett, dated March 21, 1913, for the sum of twenty-five thousand dollars, due nine months after date.  Defendant appeals from the judgment.

The plaintiff sued as pledgee of the note, alleging that the same had been indorsed and delivered to it by Hewlett as security for certain notes executed by him.  The trial court found that the consideration for the Armstrong note, as between the defendant and Hewlett, had wholly failed; and also held that that was a negotiable instrument, and that the plaintiff, as pledgee, acquired the same as an indorsee in due course.

The note in question is similar to one which came before this court in *Eastman* v. *Sunset Park Land Co.,* 35 Cal. App. 628, [170 Pac. 642].  In that case the negotiability of the note was attacked upon the same grounds which are presented by appellant here.  On the authority of that decision, we hold that the Armstrong note was a negotiable instrument.

On May 14, 1913, Hewlett executed to plaintiff a note for eleven thousand dollars. This was done in consideration of the cancellation of an unsecured eleven thousand dollar note previously executed by Hewlett to the All Night and Day Bank, which had been assigned and delivered by that payee to the plaintiff. Hewlett had executed to the All Night and Day Bank two other unsecured one-day notes, of which one was for nine thousand dollars, dated May 1, 1912, and the other was for two thousand five hundred dollars, dated February 1, 1913, both of which had been transferred to the plaintiff. The eleven thousand dollar note of date May 14, 1913, executed by Hewlett to the plaintiff, referred to the security given by Hewlett as follows: ''I hereby pledge to and deposit with said bank as collateral security for the payment of this or any other liability or liabilities of mine to said bank when due, or to become due, or may hereafter be contracted, the following property: Note of Le Roy Armstrong dated March 21, 1913, due 9 months, for $25,000, and certificate No. 30 for 187 shares of the capital stock of the Pacific Coast Motor Car Company, the market value of which is now —— dollars.''

On May 14, 1913, when Hewlett executed the eleven thousand dollar note in favor of the plaintiff, he indorsed and delivered with it, to the plaintiff, the twenty-five thousand dollar note sued on in this case, together with said certificate of stock of Pacific Coast Motor Car Company. The certificate was issued to Le Roy Armstrong and bore date March 21, 1913. It carried a blank assignment, dated May 13, 1913, signed by Armstrong. The transaction of May 14, 1913, between Hewlett and the plaintiff, was conducted on the part of the plaintiff by C. R. Bell, who was the secretary of the plaintiff. He testified that he was secretary of the All Night and Day Bank from June, 1912, until it was merged with plaintiff in April, 1913, and that prior to June, 1912, he was cashier of the All Night and Day Bank. He testified that he did not distinctly remember his conversation with Mr. Hewlett at the time of the transaction of May 14, 1913. There is no evidence showing that Hewlett informed the plaintiff that the certificate of stock which he was pledging to the plaintiff was held by him in pledge or as security for the Armstrong note. There is not contained in that note, nor in the certificate of stock, nor in any document received by the plaintiff, any statement showing or indicating that the certificate of stock

was held by Hewlett as security for the twenty-five thousand dollar note.

It was a fact, as the court correctly found from the evidence, that Hewlett held the certificate of stock only as pledgee and as security for the twenty-five thousand dollar note; that the stock was without value; that the consideration for the twenty-five thousand dollar note had wholly failed; and that as between Hewlett and Armstrong the act of Hewlett in pledging the note and certificate to the plaintiff was an act of bad faith on the part of Hewlett toward Armstrong, and was contrary to an agreement which Hewlett had made with Armstrong.

Appellant claims that the evidence was insufficient to prove that the plaintiff was the owner of the notes which were found to have been assigned to the plaintiff by the All Night and Day Bank, especially in this, that there was no evidence of delivery of the instrument of assignment from the All Night and Day Bank to the plaintiff. We think that the evidence was sufficient. The plaintiff produced in evidence an instrument in due form whereby the All Night and Day Bank purported to transfer to the plaintiff all of its notes, etc., and all assets of the All Night and Day Bank. The evidence is sufficient to prove that this instrument, together with the notes, was in the possession of the plaintiff on and before the fourteenth day of May, 1913. The court did not err in overruling defendant's objection to the admission of this instrument in evidence.

Appellant, in his answer, denied that the hypothecation of his note to the plaintiff was made to secure the nine thousand dollar note or the two thousand five hundred dollar note. His contentions in support of this denial are not only that those notes had not been transferred by the All Night and Day Bank to the plaintiff, but also that the words contained in the twenty-five thousand dollar note, which we have quoted, referring to the pledge, were not sufficient to constitute a hypothecation covering those two notes. The judgment rendered herein against appellant was for a sum a little less than twenty-five thousand dollars, being the aggregate of the principal of the three notes made by Hewlett, with interest and attorney fees thereon. Appellant contends that if he is liable at all to the plaintiff, he should not be held for anything more than the new note of eleven thousand dollars made payable to

the plaintiff. In support of these contentions counsel for appellant claims that the words "when due or to become due or may hereafter be contracted," are not sufficient to cover past-due obligations held by the plaintiff; also that the nine thousand dollar note and two thousand five hundred dollar note were not taken in the ordinary course of business and therefore cannot be deemed secured by the pledge of the Armstrong note. We think that the words above quoted from the Armstrong note are sufficient to cover past-due obligations. Also, we are of opinion that appellant is not concerned with the matter of the manner in which those notes were acquired by the plaintiff, there being no claim that Hewlett had any ground of defense against them. It is only with respect to the Armstrong note that the plaintiff was obliged to show that it was taken in the ordinary course of business.

Appellant next contends that the Armstrong note was transferred to plaintiff for collection only; and that by reason of the pledge agreement contained in the note made by Hewlett to plaintiff the assignment of the Armstrong note to plaintiff becomes not a general or special indorsement, but one upon a special contract; that for these reasons plaintiff holds the Armstrong note subject to the defendant's equitable defenses. The authorities cited by appellant in support of these propositions (*Hays* v. *Plummer,* 126 Cal. 107, [77 Am. St. Rep. 153, 58 Pac. 447]; *First Nat. Bank* v. *Golden,* 19 Cal. App. 501, [126 Pac. 498]), do not sustain the contention made by him. In the first cited case the pledged note carried upon it no indorsement by the pledgor and the plaintiff took it with actual knowledge of the circumstances out of which the defendant's equities arose. In the second case the pledged check was drawn against a savings bank and was accompanied by a passbook, by means of which the plaintiff had notice of facts which rendered the check non-negotiable. It is plain enough that the plaintiff, as pledgee of the Armstrong note, is not to be regarded as merely an assignee for purposes of collection. By reason of its interest as pledgee, it is an actual holder for value of the pledged note.

Appellant further contends that the note in controversy at the time of its transfer to plaintiff, accompanied by the certificate of shares pledged by Armstrong to secure it, was by reason of the pledge sufficient to put the plaintiff upon inquiry as to the contract of pledge, thus binding plaintiff by all the

conditions relating to that contract and the execution of the note. The bare fact that the certificate was pledged to Hewlett to secure the Armstrong note, even if known to plaintiff, did not affect the negotiability of the note. (Civ. Code, sec. 3092.) But, in fact, the Armstrong note and the certificate do not contain anything sufficient to carry notice that the one was pledged as security for the other. The only fact bringing them together at all is the fact that Hewlett had both documents in his possession on the fourteenth day of May, 1913, and delivered them at the same time to the plaintiff in pledge for his own obligation to the plaintiff. Defendant has not brought home to the plaintiff knowledge of any facts sufficient to put the plaintiff upon inquiry concerning the contract relations which at the time of the pledge made to plaintiff may have existed as between Armstrong and Hewlett. In this the case differs from the numerous authorities referred to in appellant's brief. It is not at all parallel to those instances where a note negotiable in form was pledged or otherwise transferred, together with or with notice of a mortgage securing the same, and where, on their face, the two instruments are parts of the same transaction.

In the case at bar the plaintiff proved that it acquired the note in suit, before maturity, and for value and in the usual course of business. "When this is done, unless the evidence shows that the note was taken by the plaintiff under circumstances creating the presumption that he knew the facts impeaching its validity, the burden is cast upon the defendant to show, if he would defeat the plaintiff in his action, that the latter took the instrument with notice of the defendant's equities." (*Eames* v. *Crosier*, 101 Cal. 260, [35 Pac. 873] ; *Blochman Commercial & Savings Bank* v. *Moretti*, 177 Cal. 256, [170 Pac. 419].) Under this rule, the evidence, to which we have referred, is sufficient to justify the court in its finding that the plaintiff did not have any notice or knowledge, express or implied, of the facts on which those equities depend.

Appellant takes the position that because the shares of stock, notwithstanding the blank assignment indorsed upon the certificate of stock, stood in the name of Armstrong on the books of the corporation, the bank had no right to assume that the shares belonged to Hewlett. In *Fowles* v. *National Bank of California*, 167 Cal. 653, [140 Pac. 271], a blank indorsement had been made (similar to that shown in the case at bar)

of a certificate of stock delivered in pledge; the shares remained in the name of the pledgor on the books of the corporation; the pledgee wrongfully used the certificate by pledging it to the defendant. Nevertheless it was held that, the bank having taken the certificate in good faith and without notice of the owner's claim, was entitled to retain it as security for the debt on account of which the certificate was received by it.

The judgment is affirmed.

James, J., and Myers, J., *pro tem.,* concurred.