28581. JONES *v.* COURTS *et al.*

DECIDED DECEMBER 20, 1940.

*Carl N. Davie, Alex. McLennan,* for plaintiff.

*Alston, Foster, Moise & Sibley,* for defendants.

STEPHENS, P. J.  (After stating the foregoing facts.)  Jones sued Courts & Company to recover $8627.44 proceeds of a sale by Courts & Company, as alleged agents of the plaintiff, of certain stock to Dobbs & Company which stock the plaintiff claimed belonged to him.  The defendants admitted that they had come in possession of the certificate of stock and had sold it as alleged, but they denied that in selling such stock they acted as agents for the plaintiff, but alleged that they were bona fide purchasers for value without notice.

The following appears uncontradicted from the evidence:  The plaintiff transferred the stock to Rossignol & Crocy Inc. under a customary written transfer executed by the plaintiff with the name of the transferee in blank, and the name of the true and lawful attorney therein was constituted and appointed irrevocably in his name and stead to sell, assign, transfer, and make over the stock, and for that purpose to make and execute all necessary acts of assignment and of transfer and to substitute one or more persons with like full power, and ratifying and confirming all that such attorney or substitute should lawfully do, likewise left in blank.  The plaintiff delivered this stock under this transfer to Rossignol & Crocy Inc., stockbrokers, as security for an advance of $5000 to him, and under an agreement between the plaintiff and such broker that the latter would not sell and transfer the stock.  The certificate of stock contains the name of Dobbs & Company as the transferee inserted in the blank space on the certificate for transfer provided for the insertion of the name of the transferee, and the name of Courts & Company, as such true and lawful attorney to sell and transfer the stock, is inserted in the blank space in the certificate of transfer for the insertion of the name of such attorney.  It therefore appears from the certificate that Courts & Company were the appointed attorneys of the plaintiff to sell and transfer the stock and to make it over to another by the necessary act of assign-

ment. Sometime after the plaintiff had transferred the stock to Rossignol & Crocy Inc., Courts & Company were requested by Rossignol & Crocy Inc. to take up a draft drawn by some New York bank upon Rossignol & Crocy for $15,325, which was in the Federal Reserve Bank of Atlanta, and to which draft was attached this certificate of stock and other securities. Courts & Company thereupon paid to the Federal Reserve Bank the money required to take up this draft, and charged this amount against the account of Rossignol & Crocy Inc. with them, and retained the certificate of stock and the certificate of transfer which was in the same condition as to blanks as it was in when it was transferred by the plaintiff to Rossignol & Crocy Inc. At this time Rossignol & Crocy Inc. were indebted to Courts & Company under account with Courts & Company in a sum far in excess of the value of this stock, and there was a contract in existence between Rossignol & Crocy Inc. and Courts & Company by which Courts & Company had the right to sell, as and when it saw fit, any securities which they might acquire from Rossignol & Crocy Inc. and have in their possession and to close out the account of Rossignol & Crocy Inc. Courts & Company sold this stock to Dobbs & Company in New York for $8627.44 and credited the proceeds on the general indebtedness of Rossignol & Crocy Inc. to Courts & Company. Courts & Company stamped their name in the certificate of transfer in the blank space provided for the name of the attorney to sell and transfer the stock. The name Dobbs & Company was placed in the blank provided for the name of the transferee of the stock. There appears on such certificate an indorsement in this same language, signed by Courts & Company, in which the name of Courts & Company is stamped in the blank space for the name of the appointee. After the sale of the stock by Courts & Company, the certificate of stock together with the certificate of transfer with the other indorsements indicated, were transmitted to New York where the name of Dobbs & Company was inserted therein as the transferee.

When Courts & Company took up the draft for Rossignol & Crocy Inc. and acquired possession of the certificate of stock attached, together with the transfer in blank, as it had originally been executed by the plaintiff, they had no notice of any restriction upon Rossignol & Crocy Inc., as respected their power to sell and transfer the certificate under its contract with the plaintiff. Courts & Com-

pany in taking up the draft for Rossignol & Crocy Inc. did so at its request, and in so doing Courts & Company were not mere volunteers. It therefore can not be said that by reason of being volunteers they acquired no right to charge the proceeds of the sale of this stock against Rossignol & Crocy Inc.

The law is expressed in *Woodcliff Gin Co.* v. *Kittles,* 173 *Ga.* 661, 668 (161 S. E. 119), as follows: "Shares of stock are sufficiently transferred as between the transferor and the transferee by the delivery of the certificate with a blank assignment and power of attorney to transfer the stock on the books of the company, signed and indorsed on the back thereof. . . This is the method by which sales and transfers of stock are usually made. . . The holder of certificates of stock so indorsed has prima facie a good title to the shares. . . Such a transfer prima facie authorizes the holder to fill in such blanks and procure the legal title by a transfer on the books of the company, or to complete a sale by delivery of the certificate and transfer of the stock; and this power is not limited to the person to whom the certificate is first delivered, but inures to each bona fide holder into whose hands the certificate and power may pass, each successive holder having the right to fill up the blanks, and execute the power, or cause it to be executed, whenever the protection of his own interests may require it. The power is not exhausted by the first use to which it is applied, nor revoked by the death of the party giving it, but, unless surrendered to the person who gave it, or canceled, continues in force until its execution by an actual transfer of the shares to which it relates; and the validity of neither the power nor the transfer is at all affected by the number of the persons through whose hands the certificate and power, since their first delivery, may have passed."

When Courts & Company acquired the stock, on payment of the draft against Rossignol & Crocy Inc., and the blank certificate of transfer was signed by the plaintiff, the effect of this was a transfer of the stock and the blank certificate of transfer by delivery of the same by Rossignol & Crocy Inc. as security for money which Courts & Company advanced to it. Courts & Company had no notice of any limitation imposed by the plaintiff on the right and power of Rossignol & Crocy Inc. to sell and dispose of this stock. Rossignol & Crocy Inc., in holding the certificate of stock and the certificate of transfer signed by the plaintiff in blank as to the transferee and

the attorney to sell and transfer, had all indicia of ownership thereof, and when Rossignol & Crocy Inc. delivered such stock and certificate of transfer with such blank still unfilled to Courts & Company, on Courts & Company's paying the indebtedness of Rossignol & Crocy Inc., Courts & Company, being ignorant of any limitations on Rossignol & Crocy Inc. to sell and transfer the certificate of stock, stood in the position of a bona fide purchaser without notice, and as against the plaintiff acquired title to the stock as security for the amount which Courts & Company advanced to Rossignol & Crocy Inc. on the payment by Courts & Company to the Federal Reserve Bank of the drafts on Rossignol & Crocy Inc. to which the stock in question was attached.

In support of the above conclusions see the following authorities: Morris v. Courts & Company, 59 Ga. App. 666 (1 S. E. 2d, 687); Groover v. Savannah Bank & Trust Co., 186 Ga. 476 (198 S. E. 217); Savannah Bank & Trust Co. v. Groover, 56 Ga. App. 27 (192 S. E. 49); U. S. Gypsum Co. v. Faroll, 296 Ill. App. 47 (15 N. E. 2d, 888); Jenkins v. Continental Trust Co., 150 Md. 416 (133 Atl. 610); Meehan v. North Adams Savings Bank, 302 Mass. 357 (19 N. E. 2d, 299); Desmond v. Pierce, 185 Wis. 479 (201 N. W. 742); Nicholson v. Morgan, 119 Misc. 309 (196 N. Y. Supp. 147); Ripley v. Walker & Co., 286 Mass. 264 (190 N. E. 532); Scollans v. Rollins, 173 Mass. 275, 279, 280 (53 N. E. 863, 73 Am. St. R. 284); Mylander v. Page, 162 Md. 255, 264 (159 Atl. 770); Hazard v. Powell, 23 Ohio App. 71 (154 N. E. 357); McClung v. Colwell, 107 Tenn. 592 (64 S. W. 890, 89 Am. St. R. 961); Mitchell v. Boyer, 160 App. Div. 565 (145 N. Y. Supp. 715); Leavitt v. Fischer, 11 N. Y. Super. 1; Wood's Appeal, 92 Pa. 379 (37 Am. R. 694); Baker v. Davie, 211 Mass. 429, 435 (97 N. E. 1094); Mount Holly &c. Co. v. Ferree, 17 N. J. Eq. 117; Otis v. Gardner, 105 Ill. 436; Maxwell v. Foster, 67 S. C. 377 (45 S. E. 927); Union Trust Co. v. Oliver, 214 N. Y. 517 (108 N. E. 809); Hellman &c. Bank v. Armstrong, 39 Cal. App. 483 (179 Pac. 432).

It appears from the evidence that Rossignol & Crocy Inc. were mere pledgees of the stock by Jones for security of a debt owed by Jones to Rossignol & Crocy Inc., and that expressly, under the contract between Rossignol & Crocy Inc. and Jones, Rossignol & Crocy Inc. had no right to sell or transfer the stock. If, however, Rossignol & Crocy Inc., having the indicia of the right to sell and dis-

pose of the stock as above indicated, as it did, transferred the stock to Courts & Company as security for money advanced to Rossignol & Crocy Inc. by Courts & Company, Jones would be estopped from recovering against Courts & Company, but only to the extent of the amount of money which Courts & Company had advanced to Rossignol & Crocy Inc. on the stock. The only way in which Courts & Company could become bona fide purchasers of the stock in question to any extent would be based on their detriment by reason of Jones's having put it in the power of Rossignol & Crocy Inc. to cause such detriment. If Courts & Company subsequently sold this stock for more than the amount of indebtedness which this stock secured, Courts & Company would be liable to account to the plaintiff therefor. Since it appears, however, that not only the plaintiff's stock but other stock was acquired together by Courts & Company as security for the $15,325 advanced by Courts & Company to Rossignol & Crocy Inc., and since it appears that Courts & Company afterwards sold all of this stock, and it does not appear what such stock sold for, the evidence fails to sustain a plea of estoppel. A person pleading an estoppel has the burden of sustaining the plea. *Harris* v. *Neil,* 144 *Ga.* 519 (2) (87 S. E. 661); *Glisson* v. *Burkhalter,* 31 *Ga. App.* 365 (5) (120 S. E. 664).

The fact that Rossignol & Crocy Inc. under a contract with Courts & Company had authorized them to sell whatever stocks and other securities of Rossignol & Crocy Inc. Courts & Company had in their possession to satisfy past indebtedness of Rossignol & Crocy Inc. to them would not give Courts & Company authority to sell this stock, the title to which was in Rossignol & Crocy Inc. only as security for a debt, and to which Courts & Company had no rights, except as security for the money advanced thereon to Rossignol & Crocy Inc., and to apply the proceeds of such sale on a pre-existing indebtedness of Rossignol & Crocy Inc. While Courts & Company were the agents of Jones to sell the stock, and may have so acted in selling the stock, Courts & Company could retain from the proceeds of the sale what they were legally entitled to before accounting to Jones.

The evidence was sufficient to authorize a finding for the plaintiff, and therefore did not demand the verdict directed for the defendants. The court erred in directing a verdict for the defendants. *Judgment reversed.* *Sutton and Felton, JJ., concur.*