The court erred in directing the verdict.
 DECIDED DECEMBER 20, 1940.
Harry S. Jones instituted suit against Courts Company, a partnership composed of R. W. Courts, R. W. Courts Jr., M. C. Courts, and W. F. Broadwell, and against the partners individually, in which he sought to recover $8627.44, the proceeds derived from the sale of certain shares of Coca-Cola stock, which the plaintiff alleged belonged to him and were sold by the defendants as his agents, and which the defendants, after demand, had failed and refused to account for and pay over to the plaintiff. The judge overruled the general demurrer of the defendants to the petition and they excepted. This court affirmed that judgment. Courts Co. v. Jones, 61 Ga. App. 874 (8 S.E.2d 178). For a more detailed statement of the allegations of the petition and the grounds of the demurrer thereto reference is made to that decision. *Page 240 
The defendants filed their answer, denying liability and denying that they were agents of the plaintiff in the sale of the stock referred to. The allegations of the answer with reference to the sale were substantially as follows: the defendants admitted that on December 3, 1937, they sold the 75 shares of stock referred to in the petition for $8627.44, but denied that the sale was made by them in behalf of the plaintiff. They alleged that before the date of the sale the plaintiff delivered to Rossignol Crocy Inc. the stock certificate, accompanied by a blank power of attorney, a copy of which is attached to the petition, executed by him; that on December 1, 1937, Rossignol Crocy Inc., requested the defendants to take up a draft at the Federal Reserve Bank which had been drawn on Rossignol Crocy Inc. in the sum of $15,325, and for Courts Company to advance to Rossignol Crocy Inc. the money to take up the draft and to receive the securities attached thereto; that this draft was drawn on Rossignol Crocy Inc. by the Bank of Manhattan Company, and among the certificates attached thereto was the stock certificate involved in this case; that Courts Company thereupon advanced this sum and paid it to the Federal Reserve Bank where the draft was held for collection, and received the securities attached thereto which included this stock; that Rossignol Crocy Inc. had delivered or caused to be delivered this stock certificate to the Bank of Manhattan Company with the power of attorney executed by the plaintiff; that the defendants advanced this money for Rossignol Crocy Inc. and received the 75 shares of Coca-Cola stock bona fide and "without any notice or knowledge of any claim on said stock by the plaintiff adverse to that of Rossignol Crocy Inc;" that on December 3, 1937, Rossignol Crocy Inc. were indebted to the defendants for the above sum so advanced and in other large sums which indebtedness greatly exceeded the amount of collateral held by Courts Company as security therefor; that accordingly Courts Company on such date sold the stock here involved and other securities held as collateral for the indebtedness of Rossignol Crocy Inc., and applied the proceeds thereof on that indebtedness, and that such indebtedness is still unsatisfied in a very large sum, and there is no collateral security therefor, and that the sale by them of the 75 shares of Coca-Cola stock was under the provisions of a contract between Rossignol Crocy Inc. and Courts Company, a copy of which was attached to and made a part of the answer. *Page 241 
This contract was dated July 11, 1933, and among other things provided that Rossignol Crocy Inc. desired to arrange with Courts Company to act as brokers for it in the purchase and sale of securities, and that whenever it should appear that Rossignol Crocy Inc. were indebted to Courts Company, or whenever Courts Company deemed it necessary for their protection, that they could sell any securities or other property held by them or in their possession, which belonged to Rossignol Crocy Inc. The contract further provided that such sales could be made without notice to Rossignol Crocy Inc.
The defendants amended their answer and denied that they or any of them had entered into any contract with the plaintiff to sell the stock, the subject-matter of this suit, but admitted that the plaintiff had signed the instrument dated May 18, 1937, a copy of which was attached to the petition as exhibit A. The defendants denied that they or any of them ever assigned or agreed to sell this stock for or on behalf of the plaintiff under the terms of such instrument, and denied that they or any of them, by such instrument or in any other manner, had agreed to sell this stock for the plaintiff, and further denied that they or any of them ever sold this stock for the plaintiff. They further alleged that when they sold this stock on December 3, 1937, it was sold under the contract of July 11, 1933, between the defendants and Rossignol Crocy Inc., and they alleged that such stock was delivered or caused to be delivered to them by Rossignol Crocy Inc. "with the instrument dated May 18, 1937, copy of which is attached to the petition in this case marked exhibit A executed by Harry S. Jones but with blanks where there now appear in said instrument the words `Dobbs Co., 50 Broadway, New York, N. Y.,' and the words `Courts Company,'" and that previously thereto the plaintiff had delivered possession of such stock and this instrument of May 19, 1937, to Rossignol Crocy Inc. without the insertion in the blanks provided therefor of the above names.
The case came on for trial and before the introduction of any evidence the plaintiff moved that the defendants be required to carry the burden of proof in the case, in that by their answer they had admitted a prima facie case in the plaintiff, had admitted the existence of the contract of agency on which the suit was based, and had sought to escape liability thereon to the plaintiff by pleading *Page 242 
matters in avoidance, and as such agents of the plaintiff sought to dispute his title to the stock in question. The court overruled this motion and error is assigned thereon.
From the evidence adduced on the trial these salient and controlling facts appear: On May 18, 1937, the plaintiff delivered to Rossignol 
Crocy Inc. a certificate representing 75 shares of Coca-Cola common stock, being certificate No. WC/O 11811, attached to which there was a power of attorney, or stock power, signed in blank by Jones, reading as follows: "That ____ for value received, have bargained, sold, assigned and transferred and by these presents do bargain, sell, assign and transfer unto ____ (75) shares of the common stock of the Coca-Cola Company, standing in my name on the books of the said ____ represented by certificate No. WC/O 11811 above, and ____ do hereby constitute and appoint ____ true and lawful attorney, irrevocably for, ____ and in ____ name and stead, but to ____ use, to sell, assign, transfer and make over all or any part of the said stock, and for that purpose to make and execute all necessary acts of assignment and transfer thereof, and to substitute one or more persons with like full power, hereby ratifying and confirming all that ____ said attorney or ____ substitute or substitutes shall lawfully do by virtue hereof." This instrument was dated May 18, 1937.
The stock certificate here involved was delivered by the plaintiff to Rossignol Crocy Inc., a stockbroker, as a pledge, with a limitation on the power and authority of Rossignol Crocy Inc., to the effect that such certificate was "not to be assigned to anybody." and "was not to be transferred out of the name of Mr. Jones." An employee of Rossignol 
Crocy Inc. testified as follows: "The reason I said it was that way was, Mr. Jones was putting that 75 shares of what is called parent-company Coca-Cola stock up as collateral on a five-thousand-dollar note payable to Rossignol Crocy Inc.; and Rossignol Crocy were to buy $5000 worth of Coca-Cola Bottling Company, New York, stock and pay for it for the account of Mr. Jones with this $5000, and it was understood between Mr. Jones and Rossignol Crocy Inc. that this 75 shares certificate was not to be transferred out of the name of Mr. Jones. It was merely being put up as collateral on that five-thousand-dollar note. It was not to be assigned to anybody." There appears *Page 243 
in the evidence nothing tending to indicate any failure on the part of Jones to pay the $5000 note above referred to, thereby giving to Rossignol Crocy Inc. any right to dispose of the stock delivered to it by Jones.
On December 2, 1937, after Rossignol Crocy Inc. had acquired the certificate of stock from the plaintiff as a pledge, the defendants acquired possession thereof from Rossignol Crocy Inc. in this manner: Malon C. Courts testified as follows: "Where this stock certificate . . was secured by Courts Company, this stock certificate was taken up with two drafts that came through the Federal Reserve Bank of Atlanta on the morning of December 1, 1937. . . It is correct that I say I got that stock direct from the Federal Reserve Bank on December 1, 1937." L. L. Davis, an employee of the defendants testified: "I am employed by Courts Company and was employed by them in December, 1937, in the capacity of margin clerk. That is my signature on the paper you are handing me. The purpose of a paper of that sort being signed by me is for the issuance of a check of Courts Company. It is a direction to the cashier to issue a check. Why I gave this direction to the cashier to issue this check, because I was instructed by one of the partners of Rossignol Crocy to pick up certain number of shares of stock that were on draft at the Federal Reserve Bank. They asked me to issue the check and hold the stock for them subject to payment and delivery to them. As to what stock was to be received, there were, according to this, twenty thousand treasury bonds, 75 shares of Coca-Cola, and 100 shares of Coca-Cola Bottling Company of New York. . . I did write this direction myself . . that meant that I wanted the cashier to send a runner down to deliver this check to the Federal Reserve Bank and to pick up the stock; in other words, receive the stock from the Federal Reserve Bank, bring it back to our office to be held in our box in the bank, subject to demand by Rossignol Crocy. . . I do not know anything about how Mr. Jones parted with this stock. You ask if I knew at the time I sent down to have it picked up, . . in whose name it was originally issued — for all I know the Street name was blank."
E. W. McCain, who in December, 1937, was exchange teller of the Citizens Southern National Bank, testified: "The check you show me drawn by the Citizens Southern National Bank on the *Page 244 
Federal Reserve Bank of Atlanta dated December 1, 1937, . . I have seen that check before. I first saw that check on December 1, 1937, and the occasion of my seeing it was that Courts Company asked me to draw this check payable to the Federal Reserve Bank in exchange for their stock. What I mean by exchange for my check is that Courts Company delivered us their check for the same amount and I thereupon issued that check and delivered it to Courts Company."
Carl E. Jones, who was employed at the Federal Reserve Bank in Atlanta in December, 1937, testified: "In December, 1937, . . I did handle these two papers that you hand me. What they are, that represents two letters covering two drafts received from the Bank of Manhattan Company in New York. These are the original letters that the Federal Reserve Bank received from the Manhattan Company. I did receive a draft or drafts from the Federal Reserve Bank along with these from the Bank of Manhattan Company. These drafts were drawn on Rossignol Crocy. The two drafts were paid. The sum of the two drafts . . was $36,659.72. The Federal Reserve Bank did receive this check, that is the check drawn by the Citizens Southern Bank on the Federal Reserve Bank itself and the check was paid on December 1, 1937. . . I saw what was attached to it [one of the drafts referred to which was for $15,325], what I found was attached to the draft before that was written in this exhibit No. 10, was 75 shares of Coca-Cola stock. . . When those two drafts were paid they were delivered to a runner who came from Courts Company to take up those drafts. They were marked paid, they were stamped paid across the face of the draft, and the securities that were attached to the draft were delivered to the runner also to be carried to Courts Company. And included in the securities delivered to the runner were 75 shares of Coca-Cola Company stock."
Joe E. Brown, an employee of Courts Company in 1937, testified: "I have heard the testimony here of the witnesses about two drafts, one being for $15,325 the other for $21,334.72. I have made search for those drafts and have been unable to find them. I searched our records, and the records of Rossignol Crocy that were available to me. Whether or not I saw this stock certificate No. WC/O 11811, issued by the Coca-Cola Company on or about December 1, 2, or 3, 1937, I must have seen it, because on the *Page 245 
evening of December 2 and the morning of December 3 I helped count the securities in Courts Company's vault, they were holding for our customers, and our records showed that this certificate should have been there, and after I checked them showed that it was there. I did check the securities and I state positively that it was there. It is correct that was among the securities of Rossignol Crocy that was put up by Rossignol Crocy, which we were holding for Rossignol Crocy — among those securities. We were holding them in and for the account of Rossignol Crocy with Courts Company. I had nothing to do with the sale of those 75 shares of stock except seeing that all the securities in that account we had for Rossignol Crocy had been sold. The sale was made on December 3, 1937. I know that of my own knowledge."
The brokerage contract of July 11, 1933, between Rossignol Crocy Inc. and the defendants which was attached to the answer and is referred to above, was introduced in evidence. It appeared from the evidence that when the certificate of stock was acquired by the defendants the stock power was signed by Jones, but the space for the name of the attorney in fact to sell the stock was blank, and the space for the name of the purchaser or transferee of the stock was likewise blank. Under the evidence it appeared that the certificate involved was disposed of by Courts Company as follows: A member of the defendant firm testified that on the morning of December 2, 1937, "It had become evident that the firm of Rossignol Crocy were greatly indebted to us beyond the collateral value of the securities that we held for their account, and for that purpose we sold the securities that were long in the account," and that "the power under which I claim to have sold that stock on December 3, 1937, was under the terms of the brokerage agreement contract that was entered into by Rossignol Crocy Inc." The stock was sold and delivered by Courts Company to Dobbs Company on the above date, at which time the name of "Courts Company," appeared in the stock power as attorney to sell the stock. There appeared on the stock power the following "____ hereby irrevocably constitute and appoint Courts Co. substitute to transfer the within named stock under the foregoing power of attorney, with like power of substitution. Date ____. Courts 
Company, O. Spratling." It also appeared that the signature of the registered owner of the stock and of the constituted agent, attorney, *Page 246 
and substitute, to transfer the stock under the power of attorney were guaranteed by Post Flagg, to whom the stock was sent by Courts 
Company for delivery to Dobbs Company. There was stamped on the stock power, "Delivered by Post Flagg." The evidence showed that the stock was received by the transfer agent and delivered by it to Dobbs 
Company, and that on December 8, 1937, in the office of Dobbs Company in New York, the name of Dobbs Company was inserted in the power as the purchaser and transferee of the certificate of stock.
Donald Conversano testified by deposition in part as follows: "I am employed by Dobbs Company and have been employed by them several years as transfer clerk. . . You are showing me original certificate No. WC/O 11811 representing 75 shares of the common stock of the Coca-Cola Company registered in the name of Harry S. Jones. . . When I received that certificate December 8th the stock power was in blank, . . and I did stamp in the stock power the words `Dobbs Co., 50 Broadway New York, N. Y.' . . You state that you draw my attention to the fact that stamped on the stock power after the words `do hereby constitute and appoint' appears a stamp `Courts Co.,' and ask if that power of appointment had been released when I received the certificate — yes, it had been. What I mean by being released, well, if that stamp of Courts Company on the stock power was not released, the transfer agent would not accept the stock, and in other words if it was not, the power of release was not on the certificate, it would not be a good delivery and therefore we would not accept the 75 shares of Coca-Cola originally. That is, I mean if Courts Company had not been the agent of Jones I would not accept it. I did put the words `Courts Co.' there. The language `and do hereby constitute and appoint Courts Co. true and lawful attorneys, irrevocably' — that was in there when I got it. If it had not been there I would not have accepted it."
A. Albert Greiner, office manager of Dobbs Company, testified by deposition as follows: "You show me certificate No. WC/O 11811, representing 75 shares of the common stock of the Coca-Cola Company registered in the name of Harry S. Jones with stock power attached thereto, signed by Mr. Jones. . . What I describe as a release is these words on the back `Hereby irrevocably constitute and appoint blank to transfer the within named stock *Page 247 
under the foregoing power of attorney, with like power of substitution.' . . If it had not been for that we would not have accepted that power; nor is it the custom of the other officers and the other brokers in the Street to do so. . . As to what part Courts Company played in that transfer, who they were agents for, whether my agents or Jones's agents, — there is no way for me to answer your question other than the facts as they appear to me, and they are that the original stock was issued to Mr. Harry S. Jones. . . As to who was Jones's agent in the transaction, this stock power indicates that Mr. Harry S. Jones assigned by indorsing the stock power, somebody filled in the words `Courts Co.,' and Post Flagg guaranteed Mr. Jones's signature. I know that Courts Company have been correspondents of Post Flagg, a New York concern, for a great many years, and to my mind either Post Flagg or Courts 
Company could have been agents." The witness then testified to the effect that a stock certificate was not in negotiable form and acceptable for transfer on the books of the corporation unless the name of an attorney or agent for transfer was written in the blank.
John F. Smith, an employee of Post Flagg, testified by deposition that Post Flagg received from Courts Company the stock certificate to which was attached the stock power signed by the plaintiff, and that it was the custom in transferring stock that it has to be "released," meaning that the stock power must be filled out with the name of an agent or attorney to transfer.
The witnesses in behalf of the defendants all testified that they (Courts Company) did not know the plaintiff in connection with the certificate of stock, that they were not acting as agents for the plaintiff, and that they had no discussions or dealings with the plaintiff in regard to the stock or the sale thereof. Malon Courts, one of the defendants and a member of the firm of Courts Company, testified: "I signed the name of Courts Company. I evidently did see the power of attorney. Whether I saw Mr. Harry S. Jones's name on that, I can't say that I noticed in whose name the stock certificate was registered. As to my going to the extent of finding out whose 75 shares of stock I was selling, that would be absolutely impossible for me to find out whose actual name every stock certificate was registered in that comes through our office. Whether it would be easy to turn it over and look at it; I could *Page 248 
do that, that would not mean anything to me one way or the other. I absolutely did not discuss the disposition of this stock with Mr. Jones in any way, shape or form."
On conclusion of the evidence the judge directed a verdict for the defendants, and the plaintiff excepted.
Jones sued Courts Company to recover $8627.44 proceeds of a sale by Courts Company, as alleged agents of the plaintiff, of certain stock to Dobbs Company which stock the plaintiff claimed belonged to him. The defendants admitted that they had come in possession of the certificate of stock and had sold it as alleged, but they denied that in selling such stock they acted as agents for the plaintiff, but alleged that they were bona fide purchasers for value without notice.
The following appears uncontradicted from the evidence: The plaintiff transferred the stock to Rossignol Crocy Inc. under a customary written transfer executed by the plaintiff with the name of the transferee in blank, and the name of the true and lawful attorney therein was constituted and appointed irrevocably in his name and stead to sell, assign, transfer, and make over the stock, and for that purpose to make and execute all necessary acts of assignment and of transfer and to substitute one or more persons with like full power, and ratifying and confirming all that such attorney or substitute should lawfully do, likewise left in blank. The plaintiff delivered this stock under this transfer to Rossignol Crocy Inc., stockbrokers, as security for an advance of $5000 to him, and under an agreement between the plaintiff and such broker that the latter would not sell and transfer the stock. The certificate of stock contains the name of Dobbs Company as the transferee inserted in the blank space on the certificate for transfer provided for the insertion of the name of the transferee, and the name of Courts Company, as such true and lawful attorney to sell and transfer the stock, is inserted in the blank space in the certificate of transfer for the insertion of the name of such attorney. It therefore appears from the certificate that Courts Company were the appointed attorneys of the plaintiff to sell and transfer the stock and to make it over to another by the necessary act of assignment. *Page 249 
Sometime after the plaintiff had transferred the stock to Rossignol 
Crocy Inc., Courts Company were requested by Rossignol Crocy Inc. to take up a draft drawn by some New York bank upon Rossignol Crocy for $15,325, which was in the Federal Reserve Bank of Atlanta, and to which draft was attached this certificate of stock and other securities. Courts Company thereupon paid to the Federal Reserve Bank the money required to take up this draft, and charged this amount against the account of Rossignol Crocy Inc. with them, and retained the certificate of stock and the certificate of transfer which was in the same condition as to blanks as it was in when it was transferred by the plaintiff to Rossignol Crocy Inc. At this time Rossignol Crocy Inc. were indebted to Courts Company under account with Courts Company in a sum far in excess of the value of this stock, and there was a contract in existence between Rossignol Crocy Inc. and Courts 
Company by which Courts Company had the right to sell, as and when it saw fit, any securities which they might acquire from Rossignol Crocy Inc. and have in their possession and to close out the account of Rossignol Crocy Inc. Courts Company sold this stock to Dobbs 
Company in New York for $8627.44 and credited the proceeds on the general indebtedness of Rossignol Crocy Inc. to Courts Company. Courts 
Company stamped their name in the certificate of transfer in the blank space provided for the name of the attorney to sell and transfer the stock. The name Dobbs Company was placed in the blank provided for the name of the transferee of the stock. There appears on such certificate an indorsement in this same language, signed by Courts Company, in which the name of Courts Company is stamped in the blank space for the name of the appointee. After the sale of the stock by Courts Company, the certificate of stock together with the certificate of transfer with the other indorsements indicated, were transmitted to New York where the name of Dobbs Company was inserted therein as the transferee.
When Courts Company took up the draft for Rossignol Crocy Inc. and acquired possession of the certificate of stock attached, together with the transfer in blank, as it had originally been executed by the plaintiff, they had no notice of any restriction upon Rossignol Crocy Inc., as respected their power to sell and transfer the certificate under its contract with the plaintiff. Courts Company *Page 250 
in taking up the draft for Rossignol Crocy Inc. did so at its request, and in so doing Courts Company were not mere volunteers. It therefore can not be said that by reason of being volunteers they acquired no right to charge the proceeds of the sale of this stock against Rossignol Crocy Inc.
The law is expressed in Woodcliff Gin Co. v. Kittles, 173 Ga. 661, 668
(161 S.E. 119), as follows: "Shares of stock are sufficiently transferred as between the transferor and the transferee by the delivery of the certificate with a blank assignment and power of attorney to transfer the stock on the books of the company, signed and indorsed on the back thereof. . . This is the method by which sales and transfers of stock are usually made. . . The holder of certificates of stock so indorsed has prima facie a good title to the shares. . . Such a transfer prima facie authorizes the holder to fill in such blanks and procure the legal title by a transfer on the books of the company, or to complete a sale by delivery of the certificate and transfer of the stock; and this power is not limited to the person to whom the certificate is first delivered, but inures to each bona fide holder into whose hands the certificate and power may pass, each successive holder having the right to fill up the blanks, and execute the power, or cause it to be executed, whenever the protection of his own interests may require it. The power is not exhausted by the first use to which it is applied, nor revoked by the death of the party giving it, but, unless surrendered to the person who gave it, or canceled, continues in force until its execution by an actual transfer of the shares to which it relates; and the validity of neither the power nor the transfer is at all affected by the number of the persons through whose hands the certificate and power, since their first delivery, may have passed."
When Courts Company acquired the stock, on payment of the draft against Rossignol Crocy Inc., and the blank certificate of transfer was signed by the plaintiff, the effect of this was a transfer of the stock and the blank certificate of transfer by delivery of the same by Rossignol Crocy Inc. as security for money which Courts Company advanced to it. Courts Company had no notice of any limitation imposed by the plaintiff on the right and power of Rossignol Crocy Inc. to sell and dispose of this stock. Rossignol Crocy Inc., in holding the certificate of stock and the certificate of transfer signed by the plaintiff in blank as to the transferee and *Page 251 
the attorney to sell and transfer, had all indicia of ownership thereof, and when Rossignol Crocy Inc. delivered such stock and certificate of transfer with such blank still unfilled to Courts Company, on Courts Company's paying the indebtedness of Rossignol Crocy Inc., Courts Company, being ignorant of any limitations on Rossignol Crocy Inc. to sell and transfer the certificate of stock, stood in the position of a bona fide purchaser without notice, and as against the plaintiff acquired title to the stock as security for the amount which Courts Company advanced to Rossignol Crocy Inc. on the payment by Courts Company to the Federal Reserve Bank of the drafts on Rossignol Crocy Inc. to which the stock in question was attached.
In support of the above conclusions see the following authorities:Morris v. Courts Company, 59 Ga. App. 666 (1 S.E.2d 687); Groover
v. Savannah Bank Trust Co., 186 Ga. 476 (198 S.E. 217); Savannah Bank Trust Co. v. Groover, 56 Ga. App. 27 (192 S.E. 49); U.S. Gypsum Co.v. Faroll, 296 Ill. App. 47 (15 N.E.2d, 888); Jenkins v. Continental Trust Co., 150 Md. 416 (133 A. 610); Meehan v. North Adams Savings Bank,302 Mass. 357 (19 N.E.2d, 299); Desmond v. Pierce, 185 Wis. 479 (201 N.W. 742); Nicholson v. Morgan, 119 Misc. 309 (196 N. Y. Supp. 147); Ripley v. Walker Co., 286 Mass. 264 (190 N.E. 532); Scollans v.
Rollins, 173 Mass. 275, 279, 280 (53 N.E. 863, 73 Am. St. R. 284); Mylander v. Page, 162 Md. 255, 264 (159 A. 770); Hazard v. Powell,23 Ohio App. 71 (154 N.E. 357); McClung v. Colwell, 107 Tenn. 592 (64 S.W. 890, 89 Am. St. R. 961); Mitchell v. Boyer, 160 App. Div. 565
(145 N. Y. Supp. 715); Leavitt v. Fischer, 11 N.Y. Super. 1; Wood's Appeal, 92 Pa. 379 (37 Am. R. 694); Baker v. Davie, 211 Mass. 429, 435 (97 N.E. 1094); Mount Holly c. Co. v. Ferree, 17 N. J. Eq. 117; Otis v.
Gardner, 105 Ill. 436; Maxwell v. Foster, 67 S.C. 377 (45 S.E. 927); Union Trust Co. v. Oliver, 214 N.Y. 517 (108 N.E. 809); Hellman c. Bank v.
Armstrong, 39 Cal.App. 483 (179 P. 432).
It appears from the evidence that Rossignol Crocy Inc. were mere pledgees of the stock by Jones for security of a debt owed by Jones to Rossignol Crocy Inc., and that expressly, under the contract between Rossignol Crocy Inc., and Jones, Rossignol Crocy Inc. had no right to sell or transfer the stock. If. however, Rossignol Crocy Inc., having the indicia of the right to sell and dispose *Page 252 
of the stock as above indicated, as it did, transferred the stock to Courts Company as security for money advanced to Rossignol Crocy Inc. by Courts Company, Jones would be estopped from recovering against Courts Company, but only to the extent of the amount of money which Courts Company had advanced to Rossignol Crocy Inc. on the stock. The only way in which Courts Company could become bona fide purchasers of the stock in question to any extent would be based on their detriment by reason of Jones's having put it in the power of Rossignol Crocy Inc. to cause such detriment. If Courts Company subsequently sold this stock for more than the amount of indebtedness which this stock secured, Courts Company would be liable to account to the plaintiff therefor. Since it appears, however, that not only the plaintiff's stock but other stock was acquired together by Courts Company as security for the $15,325 advanced by Courts Company to Rossignol Crocy Inc., and since it appears that Courts Company afterwards sold all of this stock, and it does not appear what such stock sold for, the evidence fails to sustain a plea of estoppel. A person pleading an estoppel has the burden of sustaining the plea. Harris v. Neil, 144 Ga. 519 (2) (87 S.E. 661); Glisson v. Burkhalter, 31 Ga. App. 365 (5) (120 S.E. 664).
The fact that Rossignol Crocy Inc. under a contract with Courts 
Company had authorized them to sell whatever stocks and other securities of Rossignol Crocy Inc. Courts Company had in their possession to satisfy past indebtedness of Rossignol Crocy Inc. to them would not give Courts Company authority to sell this stock, the title to which was in Rossignol Crocy Inc. only as security for a debt, and to which Courts Company had no rights, except as security for the money advanced thereon to Rossignol Crocy Inc., and to apply the proceeds of such sale on a pre-existing indebtedness of Rossignol Crocy Inc. While Courts Company were the agents of Jones to sell the stock, and may have so acted in selling the stock, Courts Company could retain from the proceeds of the sale what they were legally entitled to before accounting to Jones.
The evidence was sufficient to authorize a finding for the plaintiff, and therefore did not demand the verdict directed for the defendants. The court erred in directing a verdict for the defendants.
Judgment reversed. Sutton and Felton, JJ., concur. *Page 253